[No. B009204. Second Dist., Div. Seven. Mar. 11, 1986.]

VERNON FIRE FIGHTERS ASSOCIATION, LOCAL 2312 et al., Plaintiffs and Appellants, v.
CITY OF VERNON et al., Defendants and Respondents.

**COUNSEL**

Stillman, Green & Shinee and Richard A. Shinee for Plaintiffs and Appellants.

David B. Brearley, City Attorney, Ronald J. Einboden, Assistant City Attorney, and Oliver, Stoever & Laskin for Defendants and Respondents.

**OPINION**

**MORROW, J.**\*—Appellants, petitioners below, seek reversal of the judgment of the superior court denying their petition for writ of administrative mandamus on the grounds of laches. They had prayed for reinstatement to their former positions and rank as fire fighters for the City of Vernon with full restoration of all benefits and salary, expungement of any reference to any disciplinary action, suspension or discharge from their personnel records, and attorney fees and costs. We affirm the judgment.

A recitation in some detail of the history of the legal machinations of the parties is necessary to an understanding of our conclusion.

### STATEMENT OF THE CASE

Before the summer of 1978 petitioners-appellants were fire fighters working for the City of Vernon, California. They were also officers and members

---

\*Assigned by the Chairperson of the Judicial Council.

of the Vernon Fire Fighters Association, Local 2312, an affiliate of the International Association of Firefighters AFL/CIO (Union). Petitioner Dean White was vice-president, petitioner Ron Hedlund treasurer, and petitioner Ronald Beaver a director of the Union. Respondent City of Vernon was and is a municipal corporation and a general law city[1] under the laws of California (Vernon or City). The individual respondents were all officials of the City. Bruce V. Malkenhorst is the city administrator and city clerk and holds other administrative offices. Louis K. Malburg is the mayor of the city. Respondents' Gonzales, Kaeser, McCormick, Ybarra and Malburg constituted the city council. (Kaeser was no longer a council member when the case was heard.)

For about two years prior to August 23, 1978, a labor dispute had existed between the respondent City and the Union.[2] This dispute resulted in a "job action" by the union and its members. Petitioners claim that on August 23, 1978, the fire fighters reported for work but, claiming inadequate staffing, refused to respond to fire emergencies. Respondents' fire chief, George Bass, testified that the fire fighters told him they were not working and that none of the fire fighting personnel reported for duty from August 23, 1978 to November 1, 1978. Respondents claimed the Union action was an illegal strike. On September 5, 1978, the City locked the Union fire fighters out. After September 12, 1978, the City hired about 60 temporary replacements. On September 21, 1978, all 70 Union fire fighters were terminated by vote of the Vernon City Council. The Union filed a petition for writ of mandate in Vernon Firefighters v. City of Vernon, No. C253368 and the City responded by filing City of Vernon v. Vernon Firefighters, No. C254696.

The two actions were consolidated for hearing and came on for trial on October 23, 1978. Judge Harry Hupp of the superior court gave a verbal statement of decision in favor of the City[3] and directed counsel for the City to prepare findings of fact and conclusions of law. That document was never prepared by the City.[4]

---

[1] Under Government Code section 34102.

[2] The parties are not strangers to the Los Angeles County Superior Court system. (Cf. Tavernelli v. City of Vernon, No. C282987; Vernon Fire Fighters Association v. City of Vernon, No. C196116; Vernon Fire Fighters v. City of Vernon (1980) 107 Cal.App.3d 802 [165 Cal.Rptr. 908], No. C236970; Cummings v. City of Vernon, No. C396202; Tortoriello v. City of Vernon, No. C174029.)

[3] He found the "job action" was an illegal strike, and then urged the parties to sit down and negotiate a settlement of their dispute.

[4] On July 7, 1984, petitioners' counsel submitted proposed findings of fact and conclusions of law.

The cases (Nos. C253368 and C254696) were dismissed without any judgment having been entered in 1984.

Immediately after Judge Hupp's statement of decision, negotiations were resumed between the parties in an attempt to resolve the labor dispute. A document entitled "Letter of Intent" was written, dated October 31, 1978, and signed by representatives of both sides. The letter of intent purported to finalize agreement on certain points and to contemplate other areas in which future agreement was expected. Among other matters, the letter provided: "That all members of Local 2312 shall be eligible to return to work on November 1, 1978 and shall serve at least a 6 month Probationary Period," and that all pending law suits should be "dropped," and "No such suit shall be filed in the future." The nature, meaning and import of the letter and its terms is in dispute but it is clear that none of the lawsuits was then dismissed.[5] On November 1, 1978, all the Union fire fighters, including petitioners, returned to work. Thereafter attempts were made to engage in further negotiations and reach a firm agreement. Those attempts were fruitless. By February 1979 the City considered the letter of intent to be inoperable.

During December 1978, certain petitioners testified before the grand jury against some of the respondents, and they were indicted.

On March 23, 1979, respondent Malkenhorst recommended in writing to the city council that the City of Vernon revoke recognition of the Union because of the illegal strike. A hearing commenced on April 16, 1979, for that purpose. Petitioners and the Union were represented by their counsel.

After counsel for the City presented his evidence and rested, the hearing was adjourned by stipulation to 4 p.m., April 24, 1979, for presentation of the Union's evidence.

On April 6, 1979, respondents caused appellants and four other members of the Union, considered by the City to have been the "movers and shakers" of the job action of August 1978, to be served with individual notices indicating that they were suspended from duty and that a hearing concerning their possible discharge would be held at 4 p.m. on April 24, 1979, (the same time as the adjourned hearing for decertification of the Union). A virtually identical specification of charges was included with each notice. The grounds for discipline were stated as follows:

"(1) As a member of Vernon Fire Fighters Local 2312, you engaged in, encouraged, assisted and condoned an illegal strike from August 23, 1978 through and including October 31, 1978;

---

[5]Petitioners argued to the trial court that the word "dropped" did not call for dismissal.

"(2) By participating in activities during the pendency of the illegal strike, which violated Section 13A of Resolution 4027;

"(3) In attempting to interfere and harrass temporary fire fighters from performing fire fighting activities during the period of the illegal strike (August 23 through October 31, 1978);

"(4) By participating in activities which violated the Penal Code of the State of California."

On April 17, 1979, a settlement conference was held before a superior court judge on the then pending law suits. No settlement was reached, and there is dispute as to what happened next. It appears the conference was continued to May 11, 1979, and then put off calendar.

On the morning of April 24, 1979, the lawyer for the Union and the individuals who received the notices requested a continuance of the hearing on the grounds he and a petitioner were ill. That evening at the time of the hearing, two of the men who received notices appeared. One of them was heard and given a short suspension and reinstated. The other, one of petitioners herein, made no statement. Following this, the city council voted the dismissal of all of the six remaining fire fighters.

The matter of the decertification of the Union was continued to April 30, 1979, at which time the Union was represented by counsel. Petitioner White testified. The matter was continued to May 15, 1979, and then after further testimony from petitioners White, Hedlund and Farrier, to June 4, 1979.

Petitioner Hedlund wrote to the mayor and city council on June 14, 1979, requesting reconsideration of the dismissal of the six fire fighters. Five of the six, Hedlund, White, Cummings, Farrier and Rosprim appeared before the personnel committee of the City on July 2, 1979, and made statements.

Their requests for reinstatement were denied on July 3, 1979.

On August 28, 1979, the petition for writ of mandate was filed in this action. It was served about that same time. A first amended petition was filed April 25, 1980, and a second amended petition on May 11, 1981.[6] Discovery commenced almost immediately after this action was filed. Inter-

---

[6]On February 25, 1981, petitioners filed a notice of motion to amend their writ, noticed to be heard on March 16, 1981. There was no appearance on that date, and the motion was granted. The minutes reflect the moving party was ordered to give notice of the order but no such notice appears in the record until May 8, 1981.

rogatories were served, documents were requested and depositions were taken. Objections to discovery were filed. Sanctions, protective orders and compliance were sought, and accusatory and recriminatory communications couched in the strongest, albeit gentlemanly, professional language were exchanged between counsel until June 11, 1981, when the fourth session of the deposition of respondent Malkenhorst was completed.

Thereafter, litigious silence.

There were settlement discussions between the parties, and the case was settled as to Rosprim on April 21, 1982.

The original and first amended petitions were by six individuals. The second amended petition was by four. (The petition as to Rosprim was dismissed on May 18, 1983.) The three remaining petitioners served a notice of hearing of the petition on July 5, 1984, set for July 30, 1984. On July 25, 1984, petitioners served a notice continuing the hearing to August 10, 1984. On August 10, 1984, the matter was called and argued and continued to September 6, 1984. The parties orally waived the five-year provision of Code of Civil Procedure section 583, subdivision (b), to September 28, 1984.

Respondents filed their answer to the second amended petition on August 10, 1984, in which they raised the defense of laches. Respondents alleged that the action had been pending almost five years without having been brought to trial, and claimed prejudice from the delay. Seventeen additional affirmative defenses were alleged.

On August 24, 1984, the parties filed a written stipulation extending the five years to September 30, 1984, and continuing the hearing to September 28, 1984. The stipulation was without prejudice to respondents' claim of laches.

The matter finally came on to be heard and was submitted on the petitioners' writ on September 28, 1984. Substantial documentary evidence was filed by both sides. Literally, hundreds of pages of declarations and depositions, points and authorities and argument were filed on the numerous complicated issues involved in this very bitter and long-running dispute.[7]

The notice of intended decision, a five-page minute order, was dated October 3, 1984, and concluded as follows: "I find it unnecessary to resolve

---

[7]Numerous declarations were filed by the City of Vernon fire fighters, many of whom indicated that it was their understanding that Local 2312 no longer existed and had been dissolved.

these complex issues, since an additional contention of the City seems unassailable. The present petition is barred by laches.

"Since *Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, the elements of laches have been clearly established. Employees seeking a judgment compelling their reinstatement are barred from relief if they have delayed unreasonably seeking judicial relief, without sufficient excuse, and either they have evidenced acquiescence in the discharge or the delay has prejudiced their municipal employer. (1 Cal.3d at p. 359.) In considering whether the delay is unreasonable, the time both before the filing of a petition and the time between filing and bringing the cause for hearing must be included. (*Jones* v. *City of Los Angeles* (1953) 120 Cal.App.2d 858, 860-861 [disapproved on another point in *Conti, supra,* 1 Cal.3d at p. 362]; *Tustin Community Hospital, Inc.* v. *Santa Ana Community Hospital Ass'n* (1979) 89 Cal.App.3d 889, 904.)

"Petitioners were discharged on April 24, 1979, and although their initial petition for mandate was filed slightly more than four months later, their petition was not brought on for hearing until July 30, 1984, an interval of five years and three months between discharge and hearing. In *Conti,* in the absence of evidence of excuse, a delay of ten months was deemed unreasonable. (See *Conti* at 1 Cal.3d 357, fn. 3.) Petitions for mandate can be set for hearing at petitioner's instance by simply filing a notice of hearing. There appears to be no reason why the matter could not have been set for hearing at a much earlier date. The second amended petition was filed May 11, 1981, and discovery was completed that same year.

"Prejudice to the City from the delay is overwhelming and uncontradicted. Unlike *Conti,* in which there was evidence of an opening in which the petitioner there could be placed, here there are three petitioners, and the only evidence is that there are no openings in which petitioners could be placed but, to accomodate [*sic*] them, it would be necessary for the City either to create new positions or to discharge other firefighters to make room for them. This fact alone is sufficient to establish prejudice. (Cf. *Callender* v. *County of San Diego* (1958) 161 Cal.App.2d 481, 484.) Additionally, petitioners have not waived their claims for back salary and benefits, unlike the petitioner in *Conti* who sought to remove 'the last vestige of prejudice,' but they insist upon full payment to punish the City for their 'illegal' discharge. The evidence establishes that, to bring up to date the City's obligation for retirement benefits, payments exceeding $122,000 would have to be made. And if the matter were required to go back for hearing, it would be under circumstances when the attorneys and parties negotiating the agreements are no longer available and numerous witnesses to the events are not available because of death, retirement or resignation.

"Respondent is to prepare the judgment.

"Copy of this minute order mailed to counsel this date by U.S. mail."

## SCOPE OF REVIEW

■ On this appeal, our inquiry is whether or not the decision of the trial court that the petition was barred by laches is supported by any substantial evidence. (*Farmer* v. *City of Inglewood* (1982) 134 Cal.App.3d 130 [185 Cal.Rptr. 9].)

We quote from: *Eisenberg* v. *Myers* (1983) 148 Cal.App.3d 814, 820 [196 Cal.Rptr. 270]: "The function of appellate review under the independent judgment test has been determined to begin and end with the determination of whether the trial court's findings are supported by any substantial evidence. (*Harlow* v. *Carleson* (1976) 16 Cal.3d 731, 739 [129 Cal.Rptr. 298, 548 P.2d 698]; *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20].) In reviewing the evidence on appeal, all conflicts must be resolved in favor of the respondent, and when two or more inferences reasonably can be deduced from the facts, the appellate court is without power to substitute its deductions for those of the superior court. (*Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 314 [142 Cal.Rptr. 439, 572 P.2d 53]; *Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1134 [95 Cal.Rptr. 566]; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 72 [64 Cal.Rptr. 785, 435 P.2d 553].)"; *Perez* v. *Commission on Professional Competence* (1983) 149 Cal.App.3d 1167, 1176 [197 Cal.Rptr. 390]: "On review of Commission action, the trial court exercises its independent judgment on the evidence presented to the Commission. (*Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 314.) The trial court's judgment must be upheld on appeal if supported by substantial evidence. All conflicts are resolved in favor of the prevailing party who is entitled to the benefit of every reasonable inference to support the judgment. (*San Dieguito Union High School Dist.* v. *Commission on Professional Competence* (1982) 135 Cal.App.3d 278, 283 [185 Cal.Rptr. 203].) Where the trial court's findings are challenged, based on insufficiency of the evidence, Perez bears the heavy burden of showing that there is no substantial evidence to support those findings. (*Division of Labor Law Enforcement* v. *Transpacific Transportation Co.* (1979) 88 Cal.App.3d 823, 829 [152 Cal.Rptr. 98].) We start with the presumption that the record contains evidence to sustain every finding of fact. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) Our inquiry begins and ends with the determination as to whether there is any substantial evidence, contradicted or

uncontradicted, which will support the finding of fact. (*Ibid.*)"; and *County of San Diego* v. *Assessment Appeals Bd. No. 2* (1983) 148 Cal.App.3d 548, 555 [195 Cal.Rptr. 895]: "In general, substantial evidence has been defined in two ways: first, as evidence of ' " 'ponderable legal significance . . . reasonable in nature, credible, and of solid value' " ' (*Ofsevit* v. *Trustees of Cal. State University & Colleges* (1978) 21 Cal.3d 763, 773, fn. 9 [148 Cal.Rptr. 1, 582 P.2d 88]); and second, as ' "relevant evidence that a reasonable mind might accept as adequate to support a conclusion" ' (*Hosford* v. *State Personnel Bd.* (1977) 74 Cal.App.3d 302, 307 [141 Cal.Rptr. 354])."

■ The law of laches relevant to writs of mandate brought to review personnel decisions of public agencies and government employers is fully developed and very clear.[8] The touchstone case in this area is *Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351 [82 Cal.Rptr. 337, 461 P.2d 617]. The case is so well-known and often cited that no useful purpose would be served in reciting its familiar provisions. Suffice it to say that when a person has been discharged from employment by a public employer, that individual is entitled to bring mandamus in the superior court following the finalization of administrative proceedings. The mandamus action must be filed within a reasonable time following the finalization of the proceeding. Once filed, the action must be diligently pursued. If there is delay in prosecuting the mandamus action, the burden of showing that such delay is reasonable or excusable is on the petitioner. (*Id.*, at p. 357.)

If the delay is found to be unreasonable, it will still not establish the defense of laches unless there is a showing by the respondent that petitioner has acquiesced in the act complained of or that respondent has suffered some prejudice. The prejudice must be caused by the delay and may be of either a factual nature or some prejudice in the presentation of a defense. The significance of the holding in *Conti* is that such prejudice is not presumed but must be proved by competent evidence to the trial court. *Conti* disapproved prior holdings that appeared to presume prejudice from the unreasonable delay.

APPELLANTS' ARGUMENT

Appellants urge three arguments:

1. That the period of time between the filing of the petition and the hearing on the petition cannot constitute an unreasonable delay because the pendency of the action tolls laches.

---

[8]The review is largely a matter of right. (*Scott* v. *Municipal Court* (1974) 40 Cal.App.3d 995 [115 Cal.Rptr. 620].)

2. Petitioners were entitled to postpone bringing this matter to hearing, and such delay was not unreasonable, because: a. they were entitled to, and did, await the resolution of pending legal issues essential to the disposition of the instant matter; b. negotiations excused their delay; and c. the respondents are barred from utilizing the equitable doctoring of laches because they have unclean hands and "public policy" should prevent consideration of their argument.

3. No prejudice was shown.

REASONING AND OUR CONCLUSIONS

These arguments are easily disposed of.

■ There is no doubt but that the period of time to be considered as constituting possible laches includes the period of time the action is pending. Filing of the action does not toll laches.

As held in *Tustin Community Hospital, Inc.* v. *Santa Ana Community Hospital Assn.* (1979) 89 Cal.App.3d 889, 904 [153 Cal.Rptr. 76]: "A subsidiary question relates to delay during the litigation, as claimed by defendants. We agree with them that the authorities cited by plaintiff (*McCord Co.* v. *Plotnick,* 108 Cal.App.2d 392, 396 [239 P.2d 32], and *Hall* v. *Holstrom, supra,* 106 Cal.App. 563, 570 [289 P. 668]) do not support plaintiff's contention that the laches defense is applicable only to delay prior to the filing of the complaint. On the contrary, it has been held that delay during litigation may constitute such laches as would bar the granting of relief. (*Jones* v. *City of Los Angeles,* 120 Cal.App.2d 858, 860-861 [262 P.2d 37].) And this is so even though the defendant has not taken advantage of the relief provided by section 583 of the Code of Civil Procedure for failure to bring the case to trial within two years. (120 Cal.App.2d at p. 862; see also 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial § 121, pp. 2787-2788; Annot. 167 A.L.R. 1058, 1062; Annot. 43 A.L.R. 921.)"

A person who is seeking review of a personnel decision of a public employer must pursue his remedy speedily and the entire time involved is considered in determining whether or not laches bars recovery. (*Conti* v. *Board of Civil Service Commissioners, supra,* 1 Cal.3d at p. 357 [82 Cal.Rptr. 337, 461 P.2d 617].)

■ The argument *that* petitioners were entitled to delay the hearing in this case to await the outcome of other pending actions has two basic, and fatal, flaws.

First, it was not raised in the trial court. In fact, no excuse was tendered to the trial court for the delay. Since our review is limited to the issues and evidence presented to the trial court, this argument cannot be raised for the first time on appeal.

Second, their arguments are unpersuasive. Appellants now urge that the delay in setting this matter for hearing was caused by counsel's professional decision to await the outcome of certain pending cases. He cites as one of those cases *County Sanitation Dist. No. 2* v. *Los Angeles County Employees' Assn.* (1985) 38 Cal.3d 564 [214 Cal.Rptr. 424, 699 P.2d 835]. That landmark decision by the Supreme Court held that, in the absence of some statutory prohibition, public employees have a right to strike. It is extremely unlikely that the outcome of *County Sanitation Dist.* could affect the legal relationship of the parties herein because fire fighters are prohibited by section 1962 of the Labor Code from having a right to strike or to recognize a picket line of a labor organization while in the course of the performance of their official duties.[9] The issues before the Supreme Court in *County Sanitation Dist.* did not involve Labor Code section 1962. In fact, the opinion appears to reaffirm and approve the ban of the section as the court noted: "[T]he above-noted prohibition against strikes by fire-fighters was enacted nine years before the passage of the MMBA[10] and *remains in effect today.*" (*Id.,* at p. 572; italics added.) "The Legislature has already prohibited strikes by firefighters under any circumstance." (*Id.,* at p. 585.) It is clear the *County Sanitation Dist.* decision does not apply to legislative prohibitions against strikes. Thus, it appears that fire fighters still do not have the right to strike and were not affected by *County Sanitation Dist.*

The other case is *International Brotherhood of Electrical Workers* v. *City of Gridley* (1983) 34 Cal.3d 191 [193 Cal.Rptr. 518, 666 P.2d 960]. Appellants' argument is that the issue of whether or not the City of Vernon, as a general law city having no civil service system and claiming to hire its employees at will, gave the employees any property rights in employment so as to justify their bringing any action for job reinstatement.

In Tavernelli v. City of Vernon, case No. C282987, findings of fact and conclusions of law were made and the court found that the City of Vernon has no civil service system for its employees and no disciplinary hearing procedure; that the employees are well aware of this fact; that the City has always taken the position that its employees serve at its will and that of its city council and that the petitioner in that case had no property right to

---

[9]The constitutionality of this section has been upheld in *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158].

[10]Meyers-Milias-Brown Act. (Gov. Code, § 3500 et seq.)

employment with the City of Vernon and was not entitled to the predisciplinary due process set forth in *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774]. The same finding was reached in Tortoriello v. City of Vernon, case No. C174029.

True, in *International Brotherhood of Electrical Workers* v. *City of Gridley, supra,* 34 Cal.3d 191, the Supreme Court, on August 1, 1983, held that whether or not there was a civil service system is not determinative of public employees' rights to disciplinary due process, but the court did not so hold purporting to create new law but to reaffirm prior holdings. The opinion states at page 208: ". . . the city maintains that *Skelly* does not apply, because, unlike in *Skelly,* the employees fired in the instant case were not formal 'civil service' employees. However, both *Skelly* and *Perry* v. *Sindermann* (1972) 408 U.S. 593 [33 L.Ed.2d 570, 92 S.Ct. 2694], clearly establish that constitutional due process protections are not based on a 'civil service' label, but upon the ' "existence of rules and understandings, promulgated and fostered by state officials, that . . . justify his legitimate claim of entitlement to continued employment absent 'sufficient cause.' " . . .' (*Skelly, supra,* 15 Cal.3d at p. 207; 15 Cal.3d at p. 207; quoting *Perry* v. *Sindermann, supra,* 408 U.S. 593, 602-603 [33 L.Ed.2d 570, 580].) The 'civil service' distinction proposed by the city was explicitly rejected in *Mendoza* v. *Regents of University of California* (1978) 78 Cal.App.3d 168 [144 Cal.Rptr. 117]: '[W]hether an employee should be accorded the minimum due process safeguards prior to discharge ought not, and does not, turn on the eventuality that he is employed in the civil service system . . . . *The overriding consideration rather is whether the employee has a constitutionally protected property interest in his continued employment.*' (78 Cal.App.3d at pp. 173-174; orig. italics.) 'It is, of course, widely recognized that if the employee is subject to discharge only for cause, he has a property interest which is entitled to constitutional protection [citation].' (*Id.,* at p. 175; accord *Williams* v. *County of Los Angeles* (1978) 22 Cal.3d 731, 736 [150 Cal.Rptr. 475, 586 P.2d 956]; see also *Healdsburg Police Officers Assn.* v. *City of Healdsburg* (1976) 57 Cal.App.3d 444, 451 [129 Cal.Rptr. 216].)"

We cannot perceive how the pendency of *International Brotherhood of Electrical Workers* v. *City of Gridley* could be of such moment as to justify foregoing setting this matter for hearing for more than four years after discovery was completed.

Again, this argument was not made to the trial court. In any event, it is unavailing to petitioners.

We are unpersuaded by the argument that respondents have "unclean hands" and that public policy considerations should bar the consideration

of the matter of laches. Basically, petitioners' argument on this point is that they had returned to work and that "all was forgiven" between the Union and the City. They argue that but for the fact that petitioners went to the county grand jury and made charges against certain of the city officials, and respondents in this action which led to those persons being indicted, they would not have been discharged. It appears the City took action to discharge the seven Union leaders after the indictments were dropped. Appellants urge that this was retaliatory action showing unclean hands and that public policy considerations simply should stop the respondents from getting away with this. Petitioners have not presented, to the trial court or to us, any evidence in support of this contention. They simply make the argument that the facts raise a suspicion as to the respondents' motives. An additional problem with this argument is that if petitioners were serious about it, they should have pursued this action. We find it overwhelmingly difficult to muster up righteous indignation over a suspicion of wrong on which the injured party has taken no action for over four years.

Petitioners claim the pendency of settlement discussions makes the delay in litigation reasonable. The uncontroverted facts before the trial judge show that there were no settlement negotiations after the execution and exchange of a settlement agreement and mutual release as to Rosprim on April 26, 1982. There is no claim the respondents misled petitioners and no showing of any excuse or reason for the 26-month delay in setting the case for hearing after April 26, 1982.

Finally, we consider the issue of prejudice to the City.

The court below found the following items of prejudice.

1. The City had hired permanent employees to replace petitioners, and had no job openings to accommodate them.

2. Petitioners had not waived their claims for back salary and benefits and there would be substantial financial loss to the City.

3. If petitioners were reinstated, the payments by the City to PERS[11] would exceed $122,000.

4. If the matter were returned for a hearing, many people have left City employ, and witnesses and evidence are no longer available because of death, retirement or resignation.

---

[11]Public Employees Retirement System.

Before the court below, petitioners argued that there was no evidence of any prejudice. They urged: The City has gradually decreased the number of fire fighters and has not even hired any employees to replace petitioners; that respondents were not entitled to rely on their discharge because of the fact that respondent knew that petitioners were suing them.

Petitioners place strong reliance on the decisions in *Chang* v. *City of Palos Verdes Estates* (1979) 98 Cal.App.3d 557 [159 Cal.Rptr. 630] and *Pennel* v. *Pond Union School Dist.* (1973) 29 Cal.App.3d 832 [105 Cal.Rptr. 817].

Robert Alvin Chang was a tenured civil service fire fighter for the City of Palos Verdes Estates when, on October 4, 1974, he was arrested at his home for the illegal possession of controlled substances. The city manager and fire chief attended his preliminary hearing on November 13, 1974. After he was held to answer to felony charges, he was discharged by the fire chief effective December 11, 1974, for reasons set forth in a written notice of discharge of that date signed by the mayor, city manager and fire chief. They did not furnish Chang with a notice of proposed discharge, a copy of the materials on which it was based or any opportunity to respond thereto either orally or in writing as required by the ruling in *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774]. They probably did not comply with *Skelly* because *Skelly* was not decided until nine months after Chang's discharge. *Skelly* was made applicable to all pending cases where dismissals are not yet final by *Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 402 [134 Cal.Rptr. 206, 556 P.2d 306]. Chang was replaced with another person on January 1, 1975. Chang was convicted of misdemeanor charges on March 25, 1975 and appealed his discharge to the Los Angeles County Civil Service Commission which, after a hearing on April 28 and 29, 1975, issued proposed findings of fact and conclusions of law on August 11, 1975, adverse to Chang. The city council voted on November 11, 1975, to adopt those findings and conclusions and to sustain the discharge. Chang filed his administrative mandamus proceeding on December 8, 1976. The court found that Chang delayed seeking judicial review for over a year because it took him until August 2, 1976, to raise the money to pay for the cost of the transcript of the administrative hearing because his union refused to help him. His attorney then took about four months to prepare his petition. The trial court found this delay was not unreasonable and that the city was not prejudiced by the delay. The court said: "Ordinarily laches is a question of fact. (See *McClung* v. *Saito* (1970) 4 Cal.App.3d 143, 152 [84 Cal.Rptr. 44].) Whether laches has occurred in a particular case presents a question primarily for the trial court, and an appellate court will not interfere with a trial court's discretion in this respect unless it is obvious that manifest injustice has been done or unless its con-

clusions do not find substantial support in the evidence. (See *Glass* v. *Gulf Oil Corp.* (1970) 12 Cal.App.3d 412, 433 [96 Cal.Rptr. 902].)" (*Chang* v. *City of Palos Verdes Estates, supra,* 98 Cal.App.3d at p. 563.)

The court found the trial court's decision in this matter was supported by ample evidence and affirmed it.

*Pennel* v. *Pond Union School Dist.* (1973) 29 Cal.App.3d 832, is a rare case in which the court found the trial court erred in concluding there was laches. Serena Pennel had been a probationary first grade teacher at the Pond Elementary School for 10 consecutive years. She was rehired each year on a one-year basis. On May 29, 1969, when she was 64 years of age, Ms. Pennel signed a one-year contract to teach the fourth grade. Before she signed the contract she told the district superintendent she would not teach the fourth grade. During summer preparations for school, she did not participate. On the first day of school, September 3, 1969, she did not show up. Similarly, she did not appear on the next two days, and on the evening of September 4, the school board declared she had abandoned her position and voted to hire a replacement for her. On September 5, Ms. Pennel called the superintendent and told him she was ill. He told her about the board's action of the night before. From late October until the first week in December she came to school almost daily in the morning and reported for work, but was told that she had no job. On October 23, 1969, she filed a petition for writ of mandate in superior court to compel reinstatement but she dismissed it on December 8, because she said she was "very upset, and I just didn't seem like I could hold out." She stopped coming to school about the same time. She filed a second petition for reinstatement on April 2, 1970. An answer was filed on April 30, 1970, and the matter was heard on May 27, 1970. On July 21, 1970, the court entered judgment against her on the grounds she had abandoned her teaching position and that she had been guilty of undue delay resulting in prejudice and injury to respondent school board. The Court of Appeal reversed that finding, persuaded by the fact that on September 11, 1969, the appellant contacted the California Teachers Association and demanded reinstatement and by the fact that she showed up at school each day. The court also found that there was no prejudice to the school board because they hired a permanent replacement for her, by contract, before giving her any opportunity to be heard. The court found that any prejudice to respondent in the case occurred, not as a result of appellant's delay in seeking reinstatement, but rather as a consequence of the school board's having hired the permanent replacement teacher on the evening of September 4, even before appellant received notice of her dismissal. A mere eight and one-half months elapsed from her dismissal to the superior court hearing. No laches was established and the judgment of the superior court to the contrary was reversed.

The recent case of *Duff* v. *City of Gardena* (1980) 108 Cal.App.3d 930 [167 Cal.Rptr. 4], is very representative of cases in this area. Duff was hired on July 10, 1971, as a fire fighter by the City of Gardena, but apparently did not successfully complete his probation. He was discharged, sought workers' compensation and disability retirement unsuccessfully, and finally decided to petition for reinstatement on the grounds of wrongful discharge. Duff was discharged on October 10, 1972, and his workers' compensation award was granted on April 4, 1973. He sought disability retirement June 3, 1974 and that was denied in September 1974. On May 28, 1976, he filed his petition in mandamus and the hearing took place on May 2, 1978. The court said: "Finally and perhaps most forcefully we conclude the record does support the trial court's determination that Duff is precluded by laches from pursuing his alleged claim from disability retirement."

In the matter before us, the findings of fact by the trial court as to prejudice are supported by substantial evidence. In fact, No evidence to the contrary was presented.[12]

We find that the conclusions of the trial court do constitute the kind of prejudice contemplated by *Conti.*

It has been held that when a petitioner seeks reinstatement and reimbursement for salary lost, and the public employer has replaced the employee, the resulting double payment can constitute prejudice. (*Callender* v. *County of San Diego* (1958) 161 Cal.App.2d 481, 484 [327 P.2d 74]; *Conti* v. *Board of Civil Service Commissioners, supra,* 1 Cal.3d 351 [82 Cal.Rptr. 337, 461 P.2d 617].)

It has been held that the requirement that a public agency pay money to the retirement fund could constitute prejudice in and of itself.

This case does not involve "little old lady" first grade teachers or impoverished drug possessors. In this case, a Union had been at war with an employer city for years. After the discharge, the petition was timely filed and vigorously processed for two years, then, inexplicably, totally abandoned until the five-year mandatory dismissal was eminent. In the meantime, the respondent City had hired permanent replacements, incurred and paid salary and retirement costs, and would be prejudiced if forced to a hearing at so late a date.

---

[12]Petitioners' motion for request to take judicial notice, filed in this court July 31, 1985, was denied August 9, 1985. Petitioners' motion for leave to produce additional evidence filed May 31, 1985, was denied June 20, 1985.

A delay of over five years between the discharge of petitioners and the hearing in this case is unreasonable. The trial court was justified in finding prejudice had resulted to the City and laches bars the action.

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied April 8, 1986, and appellants' petition for review by the Supreme Court was denied June 4, 1986. Bird, C. J., was of the opinion that the petition should be granted.