[No. A112564. First Dist., Div. Two. Jan. 24, 2007.]

CHRISTOPHER WOMACK, Plaintiff and Appellant, v.
SAN FRANCISCO COMMUNITY COLLEGE DISTRICT et al.,
Defendants and Respondents.

COUNSEL

Siegel & Yee, Dan Siegel and Dean Royer for Plaintiff and Appellant.

Renne, Sloan, Holtzman, Sakai, Jeffrey Sloan, C. Christine Maloney and K. Scott Dickey for Defendants and Respondents.

OPINION

HAERLE, J.—

## I. INTRODUCTION

Appellant appeals from the trial court's denial of his petition for a writ of mandate brought pursuant to Code of Civil Procedure section 1085. By that petition, he sought to compel respondents to reinstate him as a regular employee in the respondent San Francisco Community College District's (hereafter District) English as a second language (ESL) department on the basis that the prior level of his work in that department had altered his status from that of a "temporary employee" to one of a "contract employee" who could not be terminated in the manner or timeframe he was in 2001. The trial court denied the motion on two grounds: (1) under the applicable statutes, appellant's status had not, in fact, changed and he was thus still a temporary employee as of the date of his termination; and (2) laches. We agree with the trial court on both grounds and hence affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Christopher Womack was hired by the District as a temporary instructor of ESL in the fall of 1987; at that time the ESL subject was taught within the English department of the college; it became a separate and distinct department in 1990. He continued to be employed in that capacity for each subsequent semester through the spring semester of 2001.

Although starting out with less class time, by 1993, Womack commenced carrying a total of nine hours, or 10.5 units, per semester; these were composed of two 3-hour or 3.75-unit composition courses and one 3-hour and 3-unit noncomposition course.[1] These were the schedule and type of classes

---

[1] There is a difference between "units" and "hours" in this context. Some teaching hours will count as a higher number of "units" depending on the type of course taught. Thus, in appellant's situation, his two composition courses were actually three hours per week each, but

Womack requested of the District; there is no record of his having requested either a higher status as an employee, e.g., contract status or tenured status, or more units of teaching.

Starting in about 1997, Womack began keeping office hours. Starting in 1999, after the enactment of Education Code section 87884, subdivision (b),[2] Womack accepted the prescribed hourly rate of pay for those hours.

Womack was given periodic performance reviews; those involved both self-evaluation and evaluation by two full-time faculty members following their observation of Womack's classes. In the spring of 2000, he received the first of several unsatisfactory performance evaluations. Nonetheless, Womack was retained into the fall semester of 2000, but he received additional unsatisfactory ratings for both that and the succeeding, i.e., spring of 2001, semesters. The evaluators observed that Womack had "made very little effort to act on [their prior] suggestions" for improvement.

Based on these three successive unsatisfactory ratings, the District chose not to continue to employ Womack. He was given notice in March 2001 that he would not be employed for the summer 2001 semester and the same notice in May 2001 regarding the fall 2001 semester.

Womack filed a grievance challenging this last review and the consequent decision regarding the fall semester nonrehire on May 30, 2001. The District denied the grievance on July 16, 2001.

Womack filed his petition for a writ of mandate on May 13, 2002. In it, he alleged that he had obtained a higher status of employment by the District, i.e., probationary status, as early as the 1995–1996 academic year. He contended that this was so because he worked more than 60 percent of a full-time work assignment for two consecutive semesters and, that being the case, had effectively become a contract employee. He further alleged that, because he continued working at that level for several additional academic years, he became a tenured instructor by operation of law at the start of the 1998–1999 academic year. On this basis, his petition asked that he be reinstated with backpay, costs, and attorney fees.

Over three years later, on July 21, 2005, Womack moved for a hearing on his petition. On September 8, 2005, such a hearing was held. On September 27, 2005, the court issued an order denying the petition. The order stated that, first, Womack's delay in both initiating his claim of permanent employment

---

for "unit" purposes those hours were given a 1.25 multiplier, thus resulting in the 3.75 unit measurement for each such course.

[2] All further statutory references are to the Education Code unless otherwise noted.

and then bringing his petition on for hearing constituted laches which had prejudiced respondents and hence barred relief. Second, the court ruled that Womack had not established that he worked in excess of 60 percent of a full-time instructor's work hours pursuant to the applicable Education Code sections.

Womack filed a timely notice of appeal on November 23, 2005.

## III. DISCUSSION

### A. *Standards of Review*

There are several different standards of review applicable to the issues before us. In the first place, the interpretation of provisions of the Education Code and the review of a denial, based on that interpretation, of a petition for a writ of mandate under Code of Civil Procedure section 1085, is subject to de novo review by this court. (See, e.g., *Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1275 [31 Cal.Rptr.3d 297]; *Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1301 [4 Cal.Rptr.3d 629].)

To the extent, however, that the appeal challenges findings of fact made by the trial court in the course of its denial of such a petition, we review such findings under the substantial evidence standard. (See, e.g., *American Federation of State, County & Municipal Employees v. Metropolitan Water Dist.* (2005) 126 Cal.App.4th 247, 261 [24 Cal.Rptr.3d 285]; *Kreeft v. City of Oakland* (1998) 68 Cal.App.4th 46, 53 [80 Cal.Rptr.2d 137].)

Regarding laches, also relied on by the trial court as a basis for denying the petition, the law regarding our standard of review is a bit more complex. In some cases, it has been held to be abuse of discretion (e.g., *In re Marriage of Plescia* (1997) 59 Cal.App.4th 252, 256 [69 Cal.Rptr.2d 120]; *In re Marriage of Copeman* (2001) 90 Cal.App.4th 324, 333 [108 Cal.Rptr.2d 801]), but not in all. As our colleagues in the Sixth District wrote in *Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1417 [128 Cal.Rptr.2d 31]: "As the California Supreme Court recently recognized, there are circumstances in which it is error to review a laches determination 'under the deferential abuse of discretion standard.' [Citation.] [¶] 'Generally speaking, the existence of laches is a question of fact to be determined by the trial court in light of all of the applicable circumstances, and in the absence of manifest injustice or a lack of substantial support in the evidence its determination will be sustained. [Citations.]' [Citation.] In other words, appellate courts review such determinations for 'manifest injustice' or for 'lack of substantial . . . evidence.' [Citation.] [¶] In cases such as this, where the finding of laches is made after

trial, the proper appellate focus is the evidence in support of the finding. Even the . . . appellate decisions . . . which employ the deferential abuse of discretion standard, do not disregard the evidence. [Citations.] As the California Supreme Court recently explained: 'Generally, a trial court's laches ruling will be sustained on appeal if there is substantial evidence to support the ruling.' [Citation.] We therefore examine the trial record for evidence in support of the trial court's finding of laches."

We will do the same regarding the laches issue here.

B. *Appellant's Work Hours Did Not Change His Status as a Temporary Employee*

The principal statute controlling whether appellant was still a "temporary employee" when he was terminated—although, as we shall see, far from the only one—is section 87482.5, which provides: "(a) Notwithstanding any other provision of law, any person who is employed to teach adult or community college classes for not more than 60 percent of the hours per week considered a full-time assignment for regular employees having comparable duties shall be classified as a temporary employee, and shall not become a contract employee under Section 87604. [¶] (b) Service as a substitute on a day-to-day basis by persons employed under this section shall not be used for purposes of calculating eligibility for contract or regular status. [¶] (c)(1) Service in professional ancillary activities by persons employed under this section, including, but not necessarily limited to, governance, staff development, grant writing, and advising student organizations, shall not be used for purposes of calculating eligibility for contract or regular status unless otherwise provided for in a collective bargaining agreement applicable to a person employed under this section. [¶] (2) This subdivision may not be construed to affect the requirements of subdivision (d) of Section 84362." (§ 87482.5.)

In the trial court, appellant presented two apparently alternative arguments. On the one hand, he contended that once he was assigned to teach nine hours, or 10.5 units, per week starting in 1993, and inasmuch as 15 hours per week was considered the equivalent of a full-time teaching assignment, he had long since met the 60 percent level and had thus essentially "graduated" from temporary employee status to something higher, i.e., contract employee status. He also argued that his assumption of "several office hours per week" should be taken into account in computing his workload and that, via that alternative methodology, he also exceeded the 60 percent level.

On appeal, appellant has abandoned the second argument and now contends only that his nine hours, or 10.5 units, constituted more than the full-time equivalent which, he maintains, is 15 hours per week, and that his

10.5 units (or even, for that matter, his nine classroom hours, i.e., without the 1.25 multiplier) equals if not exceeds the required 60 percent level.

Respondent contends that (1) in no event do voluntarily assumed office hours count on either side of the equation and (2) appellant's assigned teaching hours were only nine, or 10.5 units, as compared with a full-time instructor's mandated level of 18 hours or units per week, i.e., only "58.33% of the hours per week assigned to a full-time instructor with comparable duties."

Where the parties clearly differ now is on the question of how a "full-time" assignment is defined. As noted, appellant contends that this is essentially a matter of law and can be answered by reference to the statute just quoted and cases interpreting and applying it. Respondent argues, and the trial court concluded, that evidence of *this District's* interpretation of what constitutes a full-time teaching assignment was admissible, and that such evidence establishes that the magic number for such an assignment is 18 hours per week in the ESL department. On appeal, respondent maintains that this was and is correct. We agree.

First of all, we find nothing in the language of section 87482.5 which requires, or for that matter even suggests, that there is a mandatory, statewide definition of what constitutes a full-time teaching assignment in a community college. The critical term in that section is "60 percent of the hours per week *considered* a full-time assignment for regular employees having comparable duties." (§ 87482.5, subd. (a), italics added.) Nothing in that language suggests there is a strict legal rule as to who does the "considering" required to define a "full-time assignment." And, indeed, a companion statute suggests rather strongly that such "consideration" can and may be done by the relevant district. That statute is section 87883 which permits a community college district to provide (indeed, as appellant was apparently provided) compensation for office hours held by part-time faculty. Subdivision (b) of section 87883 then provides: "The compensation paid to part-time faculty under this article shall equal at least one paid office hour for every two classes or more taught each week or 40 percent of a full-time load *as defined by the community college district.*" (Italics added; hereafter section 87883(b).)[3]

■ As we long ago held in another "60 percent case": "It is a cardinal rule of statutory construction that statutes relating to the same subject matter must be read together and reconciled whenever possible . . . ." (*Kalina v. San Mateo Community College Dist.* (1982) 132 Cal.App.3d 48, 53 [183 Cal.Rptr.

---

[3] Although cited (actually miscited as subdivision (d), in the trial court's opinion) and quoted three times in respondent's brief to this court, this important subdivision is nowhere cited much less discussed in either of appellant's briefs to us.

12] (*Kalina*).)[4] ■ Following that rule here, we have no difficulty in concluding that section 87883(b) confirms respondents' argument that a community college district may decide what constitutes a full-time assignment for purposes of applying the 60 percent rule of section 87482.5.

In the course of arguing that, as a matter of law, *only* actual teaching hours by full-time instructors may be used as the number against which to apply the 60 percent figure, appellant relies on three cases decided by our sister courts under the predecessor statute to section 87482.5, former section 87482. These cases, he asserts, have effectively held that only classroom hours, not office hours, can be used in that computation. The cases he relies upon are *Kalina* and two other "60 percent cases," i.e., *Rooney v. San Diego Community College Dist.* (1982) 129 Cal.App.3d 977 [181 Cal.Rptr. 464] (*Rooney*) and *McGuire v. Governing Board* (1984) 161 Cal.App.3d 871 [208 Cal.Rptr. 260] (*McGuire*). We will briefly describe these cases in chronological order.

In *Rooney*, the issue before, first, the San Diego Superior Court and then a panel of Division One of the Fourth District was in which school year, 1972–1973 or 1973–1974, a community college teacher had first reached the 60 percent figure. The district conceded that this had happened in the latter school year, but not the former; the teacher insisted it was in the former school year, and the superior court agreed. The appellate court reversed, holding that, although the teacher in question had, in fact, taught over 60 percent of a full-time assignment during one of the two semesters composing the 1972–1973 school year, he had not done so in the other semester and that, under the statute as it was then written, the 60 percent computation had to be made on an annual basis. Thus, it held, the teacher had not "taught 60 percent of the hours per week *considered* a full-time assignment for regular employees." (*Rooney, supra,* 129 Cal.App.3d at pp. 981–982, italics added.) In so holding, the *Rooney* court admittedly computed the teacher's workload by comparing it to the "classroom teaching portion of a full-time assignment" (*id.* at p. 980), but it nowhere held that such was statutorily required. Indeed, at least three times it used the term "considered a full-time assignment," the language of the then fourth paragraph of former section 87482, and now the key term in section 87482.5.

■ In *Kalina*, this court reversed a decision of the San Mateo County Superior Court, which had held that a temporary instructor in the San Mateo Community College District had not exceeded a 60 percent teaching assignment mainly because (1) under section 87481, she was not entitled to

---

[4] Our Supreme Court has held to the same effect regarding other arguably inconsistent provisions of the Education Code. In *Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 919 [129 Cal.Rptr.2d 811, 62 P.3d 54], it held that a provision in that code must be interpreted " ' "with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." ' "

probationary status when hired as a full-time employee in the 1977–1978 school year, because she was not hired to fill a "vacant position" (former § 87481) for that year and (2) because she had waived any promotion beyond temporary employee status by her employment contract. In an opinion authored by our former colleague Justice Jerome Smith, this court reversed, holding that (1) former section 87482 controlled over former section 87481 and thus filling a "vacant position" was *not* a prerequisite for advancing to contract or probationary status and (2) the latter statute plus case law prohibited "the waiver of benefits afforded by the tenure law." (*Kalina, supra,* 132 Cal.App.3d at p. 55.) Although we used the phrase "60 percent or less of full-time assignments" in our opinion, we did not purport to hold, or even hint for that matter, how such an assignment should be defined. Indeed, we suggested rather strongly that there was a strong degree of local control inherent in such issues because, as we put it: "[C]ommunity college districts retain considerable control over the hiring of temporary and probationary staff." (*Ibid.*)

In *McGuire,* another decision from Division One of the Fourth District, that court again reversed the San Diego Superior Court, which had held that tutoring work by a temporary employee could be used in the 60 percent calculation. The appellate court disagreed, holding that the employee was not entitled to tenure because of the language of former section 87482, now the language appearing in section 87482.5, subdivision (a). In language strongly relied upon by appellant in his briefs to us, the court held: "Turning to the specific language of section 87482 defining a temporary employee, it speaks of a person 'who is employed to teach adult or community college classes for not more than 60 percent of the hours per week considered a full-time assignment.' We conclude the statute means what it says and the proper measure in determining whether the 60 percent limit is exceeded is the number of hours the person seeking tenure spends teaching classes compared to the number of hours per week a regular fully assigned employee spends on comparable duties. The statutory language emphasizes the teaching of classes. A reference in the statute to 'employees having comparable duties' refers back to this teaching of adult or community college classes and follows that emphasis. [¶] In *Rooney* v. *San Diego Community College Dist.*[, *supra,*] 129 Cal.App.3d 977, the court, in determining whether the 60 percent limit had been exceeded, examined the employee's regularly assigned teaching hours to see if these hours exceeded 60 percent of the classroom teaching portion of a full-time assignment [citation]. Similarly, the court in *Kalina* v. *San Mateo Community College Dist., supra,* 132 Cal.App.3d 48, 51, also discussed the 60 percent limit of section 87482 in terms of the number of units taught, with 15 units considered a full-time assignment." (*McGuire, supra,* 161 Cal.App.3d at p. 875.)

We disagree with appellant that these paragraphs from *McGuire* mean that, as a matter of law, current section 87482.5 requires that both sides of the 60 percent equation be computed *solely* on the basis of "regularly assigned teaching hours." In the first place, the *McGuire* court's statement that our holding in *Kalina* was based on "15 units [being] considered a full-time assignment" is simply not supported by anything in the crucial portion of our *Kalina* opinion. Second, *McGuire* was decided before the enactment of section 87883(b), quoted above, which makes clear the substantial discretion of the relevant district to define what is meant by a "full-time load." (§ 87883(b).) Third, even if we disregard the language of section 87883(b), we do not interpret *McGuire* as denying the power and right of a district to exercise its discretion pursuant to the critical "considered" terminology used in section 87482.5, subdivision (a), terminology quoted in all three of the decisions just discussed.

In the court below and in their briefs to us, respondents contend not only that a local community college district may use its discretion in defining a "full-time load," but that this District has done so here, and has specifically defined it as *18 hours*, including three mandatory office hours for ESL instructors.

As to the first point, respondents rely not only on section 87883(b), discussed above, but also on language in a case interpreting a companion "60 percent rule" applicable to elementary school teachers and found in former section 44887.[5] That statute also used the "considered a full-time assignment" terminology. In applying that language, which it specifically italicized, the appellate court held: "[I]t follows [that] what is considered a full-time assignment is left to the determination of the Board, within its reasonably exercised discretion." (*Steinberg v. Los Angeles City Unified School Dist.* (1979) 95 Cal.App.3d 437, 442 [157 Cal.Rptr. 7].) We agree with this interpretation; indeed, what else could the Legislature have meant, either regarding elementary or community college teachers, by the careful term "*considered* a full-time assignment"? (Italics added.)

Regarding whether this sort of discretion has in fact been used by this District, respondents note, in particular, an agreement reached in 1987 between the union representing the staff of the District (AFT Local 2121) and the District. That agreement resolved yet another budding "60 percent controversy" regarding some nominally temporary employees in the English

---

[5] Now section 44929.25. That statute still uses the same "60 percent of the hours per week considered a full-time assignment for permanent employees having comparable duties" language it did in its earlier version. (§ 44929.25.) That language is identical (except for the use of the word "permanent" in place of the word "regular") to the terminology of section 87482.5, subdivision (a) regarding community college instructors.

department of San Francisco City College. By it, the parties expressly agreed to change the number of office hours mandated for full-time English instructors from two to three, thus increasing the full-time hourly requirement of permanent instructors from 17 to 18 hours.

The trial court characterized this evidence as "compelling" in that part of its opinion holding that appellant had failed to carry his burden of showing that only 15 units was considered to be a full-time assignment. As additional support for its factual finding that, in the pertinent District, 18 hours was the mandated full-time assignment in the English and ESL departments, the trial court also relied on a paragraph in a July 1, 1989, "Faculty Handbook" to the effect that "[a]ll contract and regular certificated unit members of the College English Department who teach a 1.25 or other multiplier class within their assignment shall be required to schedule and hold three (3) office hours weekly." Finally, the court noted both the lack of any credible evidence adduced by appellant to the contrary and the provisions of section 87883(b) (miscited by the court as § 87883, subd. (d)), quoted and discussed above.

■ As we noted in our discussion of the applicable standards of review, when as here a trial court makes pertinent factual findings in the course of ruling on a Code of Civil Procedure section 1085 petition, those findings are subject to a substantial evidence standard of review. (See, e.g., *American Federation of State, County & Municipal Employees v. Metropolitan Water Dist., supra,* 126 Cal.App.4th at p. 261; *Kreeft v. City of Oakland, supra,* 68 Cal.App.4th at p. 53.) We hold that the evidence relied on by the trial court clearly constitutes substantial evidence that, in the case of this District, a "full-time assignment" in its English and ESL departments was 18 hours per week during the pertinent years. Appellant's hours (again adjusted by the 1.25 factor for composition courses) were 10.5. As noted above, he has, on appeal, abandoned any claim that the office hours he in fact kept should be added to this.[6] Thus, appellant's percentage of the full-time equivalent was less than 60 percent, i.e., 58.33 percent.

## C. *Laches*

■ Our Supreme Court has been quite clear that the principle of laches is particularly pertinent in litigation concerning public employment. In *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 68 [99 Cal.Rptr.2d 316, 5 P.3d 874] (*Johnson*), a unanimous court, in an opinion authored by Justice Kennard, held that laches barred a writ petition filed by a municipal employee

---

[6] It bears noting again that appellant was paid for those hours. Also pertinent here is that appellant's abandonment of this argument was and is effectively compelled by section 87884, subdivision (b), which makes clear that, *as to temporary employees* of a community college district, office hours may not count toward the 60 percent level. (§ 87884, subd. (b).)

claiming employment discrimination. Regarding the application of laches in such a case, the court stated: " 'The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay.' [Citation.] Review of a personnel decision of a public agency must be sought promptly. [Citation.] As relevant here, the period of delay to be considered includes the time both before and after the filing of the petition for administrative mandate. [Citations.] Here, that delay exceeds three years. [¶] Plaintiff waited more than 18 months *before* filing in the superior court his petition for writ of administrative mandate. He was notified on December 28, 1993, of the city council's rejection of his internal administrative appeal. But he did not file his petition for administrative mandate with the superior court until July 14, 1995. . . . Plaintiff's delay of more than three years from the time the city council upheld the personnel board's decision was unreasonable." (*Id.* at p. 68.)

Relying on this and similar authority, respondents point to two separate and distinct periods of time during which, they argue, appellant substantially delayed bringing the issue of his employment status with the District to a head and did so prejudicially to the District. First of all, they contend that appellant prejudicially delayed filing his original Code of Civil Procedure section 1085 petition until May 2002, even though he knew as early as March 2001 that he would not be retained for the fall 2001 semester. Second, they urge that appellant prejudicially delayed a full three years between the filing of his petition for a writ of mandate and moving to have that petition heard by the trial court. The trial court agreed with both arguments. Indeed, in contrast to ourselves, the trial court made laches its initial ground for denying appellant's petition.

We agree that laches applies here. More specifically, we find that substantial evidence supports the trial court's several findings regarding the application of the doctrine of laches. (See, regarding that standard of review, *Bono v. Clark, supra,* 103 Cal.App.4th at p. 1417; *Johnson, supra,* 24 Cal.4th at p. 67.)

 The trial court held, correctly in our view, that it was per se unreasonable for appellant to wait until 2002 to assert that he had exceeded the 60 percent level, when in fact he started teaching 10.5 units as early as 1993.[7] The law is clear that a public employee seeking writ review of a personnel decision adverse to him or her must do so "within a reasonable time following the finalization of the [personnel or grievance] proceeding." (*Vernon Fire Fighters Assn. v. City of Vernon* (1986) 178 Cal.App.3d 710, 719 [223 Cal.Rptr. 871]; see also, to the same effect, *American Federation of*

---

[7] The trial court suggested this was a 12-year delay. It seems like more of a nine-year delay to us, but that's still clearly too long.

*Teachers v. Board of Education* (1977) 77 Cal.App.3d 100, 108–109 [143 Cal.Rptr. 264] (*AFT*).)[8] Further, the trial court found, as matters of fact, both that appellant "acquiesced in the challenged employment action" *and* that the District was prejudiced by this extended acquiescence because, among several other things, of its consequent "increased exposure to back pay," specifically "a wage differential for seven years of alleged misclassification . . . ." Substantial evidence supports both of these findings by the trial court.

Second, the trial court found (and respondents predictably agree in their briefs to us) that there was additional acquiescence on the part of appellant and prejudice to respondents arising from appellant's three-year delay in prosecuting his petition, i.e., the three-plus years from its filing in May 2002 until his motion to bring the petition on for hearing, which was not filed until July 2005.[9]

In the trial court, appellant cited three reasons which, he asserted, explained and justified this three-plus-year delay: ignorance of the law, lack of assets with which to prosecute the action, and a change in associates in his attorneys' law firm. But "ignorance of the law" clearly does not suffice as a reason after the point in time—May 2002, when the Code of Civil Procedure section 1085 petition was filed—he had an experienced and knowledgeable counsel representing him. And, on appeal, appellant has effectively abandoned his other two alleged justifications for the delay. As a result, the "acquiescence" factor seems to be clearly established; as far as prejudice to respondents, substantial evidence also supports the trial court's findings that there was also such regarding this aspect of the delay, i.e., the District's new millennium budgetary woes and its lack of any vacant ESL position into which to reinstate appellant.

---

[8] Appellant suggests, indeed several times in his briefs to us, that this case was effectively overruled by our Supreme Court's decision in *Peralta Federation of Teachers v. Peralta Community College Dist.* (1979) 24 Cal.3d 369 [155 Cal.Rptr. 679, 595 P.2d 113] (*Peralta*). We disagree. In the first place, *Peralta* nowhere discusses or even cites *AFT*. Secondly, the holding in *Peralta* concerned the "temporary status"—or not—of 12 community college teachers employed in the late 1960's, i.e., before the predecessor statute to what is now section 87482.5 was enacted. In view of the " 'bewildering array of statutory changes' " confronting those employees at that time, the court adopted a Court of Appeal holding that, " 'as a matter of law, these employees' rights are not barred by laches . . . .' " (*Peralta, supra,* at p. 386.) This holding was clearly unique to the era of that case, and has no pertinence to this case or, for that matter, to the application of the doctrine of laches in the apparently rather fertile field of educational employee litigation generally.

[9] Admittedly, there was some discovery conducted in the 2002–2003 period, but apparently very little else.

## IV. DISPOSITION

The order denying the petition is affirmed.

Kline, P. J., and Lambden, J., concurred.