[No. C000808. Third Dist. July 31, 1989.]

DEAN DANIELS et al., Plaintiffs and Appellants, v.
SHASTA-TEHAMA-TRINITY JOINT COMMUNITY COLLEGE
DISTRICT et al., Defendants and Respondents.

910

COUNSEL

Marcus Vanderlaan and Christiana Tiedemann for Plaintiffs and Appellants.

M. Carol Stevens, Janae H. Novotny, Whitmore, Kay & Stevens, Donald A. Selke, Jr., and Wells, Wingate, Small & Graham for Defendants and Respondents.

OPINION

BLEASE, J.—This mandamus action (Code Civ. Proc., § 1085) involves the reemployment rights of regular (tenured) and contract (probationary)[1] community college teachers, whose jobs were terminated by layoff, to positions created and assigned to temporary, part-time teachers after the layoff. It arises following the 1982 layoff of appellants, regular and contract employees. Following the layoff, the Shasta-Tehama-Trinity Joint Community College District (District) hired temporary, part-time instructors (apparently temporary employees who previously taught evening classes) to teach evening classes in the District.[2] Appellants were not offered these positions. The pivotal issue is whether appellants have a preferred right to reappointment to teach such classes.

Appellants contend that the statutes which provide for the reappointment of teachers whose jobs were terminated by layoff (Ed. Code, §§ 87744, 87745) obligated the District to offer them temporary positions created within the periods (39 and 24 months respectively) to which such reemployment rights extend. The District claims that appellants have no right to

---

[1] See discussion of classifications, footnote 3, *post.*

[2] The part-time instructors teach less than 60 percent of a full-time assignment. They are "temporary" employees by virtue of Education Code section 87482.5 (see former § 87482) and, subject to their contractual rights, may be dismissed "at any time at the pleasure of the [governing] board [of the community college district]." (Ed. Code, § 87742; see also §§ 87665, 44953, 44954.)

those positions because they are evening positions to be filled only by the part-time employees, a consequence it says stems from a collective bargaining agreement between the District and the Shasta College Faculty Association (Association). The District also contends that appellants' delay in challenging the hiring of the temporary employees precludes them from obtaining any relief.

We agree with the appellants that the Education Code provides them with a preferred right to reappointment to perform services which they are certificated and competent to render in any position held by a temporary employee which is created after their layoff, i.e., to positions which the District has created for assignment to temporary employees. We further agree with appellants that the trial court's finding of laches in initiating the claim was erroneous as to temporary positions created thereafter.

## FACTS AND PROCEDURAL BACKGROUND

We begin with a chronology of events leading to this appeal. Appellants are all regular (permanent) or contract (probationary) employees.[3] (Ed. Code, §§ 87604, 87601, 87609.)[4] They are entitled to notice and a hearing prior to termination of their employments. (§ 87740; *Balen* v. *Peralta Junior College District, supra,* 11 Cal.3d at p. 826.) In March 1982 appellants were notified that they were to be laid off pursuant to section 87743, the provision governing the layoff of tenured and probationary employees because of a "reduction in attendance" or a "reduction or discontinuance of a particular kind of service." (§ 87743.)[5] The layoff notices included a list of the positions to be reduced in the various departments. It stated that the specified services to be reduced or discontinued were the full-time equivalent of 18.78 teaching, counseling, and library positions. No distinction was made between daytime classes and evening classes.

---

[3] Each certificated employee of a school district must be classified as a regular employee, a contract employee, or a temporary employee. (§ 87604.) "Regular" (or "permanent") employees are instructors who have achieved tenure. (§§ 87601, 87609.) "Contract" (or "probationary") employees are on tenure track. A two-year probationary period precedes tenured status; thus a contract employee is either serving on a first- or second-year contract (§§ 87601-87609). To fill its short range needs, a district may hire certificated individuals as "temporary" employees who, as a general rule, may be dismissed "at any time at the pleasure of the [governing] board [of the community college district]." (§§ 87742, 44953, 44494; *Balen* v. *Peralta Junior College District* (1974) 11 Cal.3d 821, 826 [114 Cal.Rptr. 589, 523 P.2d 629].)

[4] All further undesignated sections are to the Education Code.

[5] As part of the 1976 reorganization of the Education Code, provisions governing community college districts were segregated from those applicable to elementary and secondary school districts. (Stats. 1976, ch. 1010.) Sections that originally applied to both groups were codified twice in the reorganized code. Former section 13447, which governed layoffs, became Sections 44955 (K-12) and 87743 (community college).

Section 87743 provides that whenever it becomes necessary by reason of either of the specified conditions "to decrease the number of tenured employees in the district, the governing board may terminate the services of not more than a corresponding percentage of the employees of the district, tenured as well as probationary . . . ." The section further provides that "the services of no tenured employee may be terminated under this section while any probationary employee, *or any other employee with less seniority,* is retained to render a service . . . [for which] the tenured employee possesses the minimum qualifications . . . and is competent to serve . . . ." (Italics added.) This statute contemplates layoff proceedings for only tenured and contract employees. It specifically provides that in the event a "tenured or probationary employee" is not given the statutory notice and hearing right, "he or she shall be deemed reemployed for the ensuing school year." (*Ibid.*) The exclusive applicability of this section to tenured and probationary employees is consistent with the scheme provided in the Education Code relating to temporary employees, i.e., they are dismissable at will (§ 87742) and they are hired for a limited (and designated) duration. (§ 87477;[6] see also *Peralta Federation of Teachers* v. *Peralta Community College District* (1979) 24 Cal.3d 369, 380 [155 Cal.Rptr. 679, 595 P.2d 113].)

The layoff hearing in this case was held on April 21, 1982, before an administrative law judge with the Office of Administrative Hearings. Appellants were represented at that hearing by the Shasta College Faculty Association (Association), their exclusive bargaining agent. At the commencement of the hearing, a conversation ensued between the hearing officer (CEO), the Association, and the District regarding the propriety of "accusations" (i.e., layoff notices) which were sent to temporary (part-time) employees. The parties agreed that the temporary employees were not entitled to a hearing before the governing board. The District consequently withdrew the accusations as to those employees.

A seniority list containing the names of the District's tenured and contract employees was presented as an exhibit by the District. That exhibit served as the focus of the questioning relating to the propriety of certain layoffs. Testifying at the hearing, the District's chief executive officer, Kenneth Cerreta, related the number of positions in the various departments

---

[6]Section 87477 provides that classification of all certificated employees "shall be made at the time of employment and thereafter in the month of July of each academic year. At the time of initial employment . . . , each new certificated employee of the community college district shall receive a written statement indicating his employment status and the salary that he is to be paid. *If a community college district hires a certificated person as a temporary employee, the written statement shall clearly indicate the temporary nature of the employment and the length of time for which the person is being employed. . . .*" (Italics added.)

that were to be reduced; no distinction between day and evening classes was made. Cerreta then testified about steps taken to verify the accuracy of the seniority list. Upon the questioning of the District's counsel, the CEO gave a detailed list of the identity of the employees (and a description of their positions) on the seniority list that the District intended to "protect or skip over," i.e., employees with seniority numbers lower than those of appellants who were being retained because they provided services for which appellants were not qualified or credentialed to teach. The only employees the District claimed to be "skipping" over were tenured and contract employees; no names of temporary employees were mentioned.

The Association challenged the reasons for reduction in certain services, the categorization of some instructors (e.g., as a "Composition and Remediation" instructor as opposed to an "English" instructor), an allegation of capriciousness as to a particular layoff and an assertion by one instructor of a right to "bump" a less senior full-time instructor who was being retained. One instructor expressly waived her right to bump a less senior full-time instructor.

The decision of the administrative law judge, adopted by the governing Board, stated that cause had been established "for not reemploying 17.33 FTE certificated employees . . . under Section 87743 . . . because of discontinuance or reduction in particular kinds of service . . . ."[7] It included a list of the tenured and contract employees to be laid off and the full-time equivalent figures for each of their services; the total equaled 17.33 full-time equivalent certificated employees. The decision included the finding that "[n]o certificated employees with less seniority are being retained for service which any [laid-off employee] is certificated and competent to render." It further stated that the accusations against the temporary employees "should be dismissed" and it specifically deemed one employee (as to whom there was a dispute as to her status) "a temporary employee without any employment rights under Section 87743."

On June 11, 1982, by letter to the District, petitioner Dick Kakuda asked for a position teaching any of 11 evening courses to be offered in the fall 1982 semester. His request was denied.

In mid-April 1983, almost one year after the layoff hearing, the Association filed grievances on appellants' behalf. It claimed a right by appellants to positions in the evening classes offered in 1982-1983 and filled by temporary instructors. After the grievances were denied by the District, an

---

[7]The notice sent to the teachers said that 18.78 positions were to be reduced. The resignation of a full-time counselor reduced the figure to 17.78. The remaining .45 related to the position of a temporary employee who was informed that she would not be "reemployed."

arbitration hearing was scheduled. At the hearing, the Association expressed its objection to the arbitrability of the issue. Following the hearing, the arbitrator concluded that, pursuant to the 1981-1984 collective bargaining agreement between the District and the Association, the tenured and contract employees do not "have a right . . . to bump an evening instructor" and that the District did not violate the agreement by failing to assign appellants "who were day-time instructors, on layoff status, employment as evening instructors." In reaching this conclusion, the arbitrator relied in part on the fact that the agreement provides for the creation of a separate seniority list for temporary employees. The arbitrator also construed the agreement as vesting in the District the right to assign full-time instructors to an evening class; he concluded that the full-time instructors did "not have the right, unilaterally, to exercise his/her . . . seniority to bump a part-time (temporary) employee." (See fn. 9, *infra*.)

Appellants subsequently filed this mandamus petition (Code Civ. Proc., § 1085) and petition to vacate the arbitration award in superior court. In the mandamus action, they sought an order obligating the District to accord them their statutory rights of rehire pursuant to sections 87744 and 87745. Those sections give laid-off tenured (§ 87744) and contract (§ 87745) employees a preferred right to reappointment to any position which they are competent and certificated to render for respectively 39 months and 24 months, "if the number of employees is increased or the discontinued service is reestablished . . . ." (§§ 87744, 87745.) Section 87744 further provides that "no contract or other employee with less seniority shall be employed to render a service which the employee is certificated and competent to render" while section 87745 provides that "no contract or temporary employee with less seniority shall be employed to render a service which such employee is certificated and competent to render . . . ." Both sections also give a preferred right to the laid-off employees to "be offered prior opportunity for temporary service during the absence of any other employee who has been granted a leave of absence or who is temporarily absent from duty." (§§ 87744, subd. (d); 87745, subd. (c).) Section 87744 additionally allows a tenured employee to waive the right to reappointment for up to one school year.

Appellants allege in their petition that commencing with the 1982-1983 school year and each succeeding year thereafter the "DISTRICT has re-established and continued the services which were discontinued in the 1982 Layoff Proceeding" and beginning in 1982-1983 the District has made appointments for evening classes "solely from the seniority list maintained for temporary . . . employees . . . ."

At the mandamus hearing in the superior court, the parties agreed to *bifurcate* the issues before the court. The parties stipulated that the first

issue before the court was *"Whether the District was obligated* by virtue of Sections 87744 and 87745 of the Education Code [statutes providing rights of rehire to permanent (tenured) and contract (probationary) teachers following layoff] *to offer to the Petitioners* or any of them who were laid off in the 1982 reduction in force proceeding pursuant to the provisions of Section 8774[3] of the Education Code . . . *Positions in the so-called evening program* as that term is used in the arbitration hearing for which Petitioners were credentialed and competent, *for any school year starting with the 1982/1983 school year* all the way up to date . . . ." (Italics added.) The parties agreed to reserve for the second part of trial the issues of the "identity . . . of each position occupied by some part-time temporary employee commencing with July 1, 1982, all the way to today for which . . . any of the Petitioners had a right to claim rehire rights. . . . And the amount of damages and the existence of damages, if any, for each of Petitioners and the amount and scope of any other relief for each of Petitioners."

This stipulation notwithstanding, in their trial brief appellants addressed the District's defense of laches. The District had alleged in its answer to the petition that appellants had unduly delayed in their action seeking reinstatement and that such delay was prejudicial. The District had also alleged that appellants had failed to exhaust their administrative remedies by failing to assert their right to the evening classes at the layoff hearing.

The stipulated issue presented to the court essentially was whether the laid-off tenured and contract teachers had a statutory right to *be offered* the positions ultimately occupied by part-time temporary teachers beginning in the 1982/1983 school year, i.e., the session immediately after the layoff. The District's position was that it had no obligation to offer the laid off tenured teachers the evening positions because of provisions in the 1981-1984 master contract agreement. Its claim was that, as a consequence of the Association negotiating provisions giving greater benefits to the part-time instructors than given by statute and providing for the creation of a seniority list for the part-time temporary employees, the tenured teachers had no right to the evening classes.

The trial court never resolved the legal question of appellants' rights under the statutes. In its statement of decision, it chronicled the events leading up to the master contract, the events at the layoff hearing, and the subsequent events leading to this lawsuit. The court then concluded that the defenses of laches and estoppel were available to the District. As to the estoppel defense, the court asserted that (1) the Association "was responsible for the conditions which led to the disputed interpretation of the Master Contract and its relationship to the [appellants' statutory] rights," and (2) the appellants were aware of the "District's interpretation of their rights in

the contract, perhaps as early as April 1982, but most certainly by May 1982, but failed to take "any formal action upon which the District could have legally acted until April 1983." The court stated that "[d]uring said period the District had expended and committed the expenditure of a considerable amount of funds in reasonable reliance on the Petitioners' conduct."

As to the laches determination, the court relied for the prejudice requirement on appellants' delay in bringing this action until after temporary employees were hired *and paid* for a full year.

The court asserted that appellants were *estopped* not only from asserting any rights relating to the 1982-1983 school year (i.e., the school year following the layoff and preceding the filing of this action) but also from asserting *any* rights under sections 87744 and 87745 relating to the 1982 layoff (i.e., any rights in the positions for the school year beginning after this action was filed.) The court rejected the claim that, even if appellants had been derelict in asserting their rights to the evening positions in 1982, they were entitled to those positions the semester following the filing of their grievance. Although the court acknowledged that the appellants' position on this issue "has some merit" it reasoned that because the temporary employees had been paid for the 1982-1983 school year and because appellants had not waived any backpay as to that year the grant of any rehire rights to the appellants would be to the District's prejudice.

Appellants claim on appeal[8] that the District failed to comply with the rehire provisions of sections 87744 and 87745.[9] Their position essentially is that the statutory prerequisites to their reappointment priorities are met (i.e., the number of employees is increased or the discontinued service is reestablished) whenever an evening class (generally taught by part-time, temporary teachers) is offered in a new semester because temporary teachers are "uniformly dismissed" at the end of each school year. The District retorts that tenured and contract employees' rehire rights provided by those sections do not apply to classes taught in the evenings. The District's claim

[8] Appellants are the individual laid-off teachers. The Association asserted in the trial court and continues to assert on appeal that appellants do not have standing to petition to vacate the arbitration award and have failed to establish facts constituting a ground for vacating the award. Appellants have dropped their appeal from the denial of their petition to vacate the arbitrator's award. (See fn. 9, *ante*.)

[9] At oral argument, appellants represented that they are not appealing the denial of their petition to vacate the arbitrator's decision. This is so, they represented, because the arbitrator's decision regarding appellants' rights under the master contract has no effect on appellants' rights under the Education Code. (See *San Francisco Classroom Teachers Assn.* v. *San Francisco Unified School Dist.* (1987) 196 Cal.App.3d 627, 636 [242 Cal.Rptr. 352].) The arbitrator did not purport to determine appellants' statutory rights. (See fn. 15, *ante*.)

essentially is that there are two distinct and separate "services of certificated employment in community colleges, the daytime program and the evening program" and that instructors in the daytime program have no rights in the evening classes. The District argues that it "was not obligated to offer the evening positions to Appellants because the Education Code does not create the rights they allege."

Appellants also challenge on appeal the trial court's laches and estoppel determinations. They argue that because the District did not raise an estoppel defense below, the trial court erred in making a finding on that issue. They further argue that their claims are not barred by laches because the District has failed to show prejudice arising from their assertion of their rights.

## DISCUSSION

## I

■ We first consider the question posed to the trial court, i.e., appellants' statutory rights to be offered the contested positions. As we stated above, the Education Code requires compliance with specified procedures before a tenured or contract employee can be laid off because of a reduction in services. The layoff statute gives priority to tenured employees over contract employees (see § 87743) and priority based on seniority. The layoff statute makes no mention of temporary employees. The rehire statutes, sections 87744 and 87745, which have significance only after a layoff pursuant to section 87743, provide for the order of rehiring the laid-off tenured and contract employees when "the number of employees is increased or the discontinued service is reestablished . . . ." If a laid-off tenured employee is certificated and competent to render a service, he or she has a preferred right to reappointment for a period of 39 months over a "contract or other employee with less seniority . . . ." (§ 87744, subd. (a).) A laid-off contract employee has a preferred right to reappointment for a period of 24 months "subject to the prior rights to reappointment by all [tenured] employees as set forth in Section 87744" over any "contract or temporary employee with less seniority." (§ 87745, subd. (a).) Both sections further provide that the preferred right to reappointment applies even in the absence of an increase in employees or reestablishment of a discontinued service to a position of "temporary service during the absence of any other employee who has been granted a leave of absence or who is temporarily absent from duty."[10] (§§ 87744, subd. (d); 87745, subd. (c).)

---

[10] This clause derived from language in former section 13448 (the predecessor to §§ 87744, 87745 [reemployment statutes for community colleges] and § 44956 [K-12 reemployment

These statutes create a hierarchy of rights. Laid-off tenured employees have preferred reappointment rights over contract employees who have priority over temporary employees. Additionally, within each of those categories, seniority has priority.

At the time the predecessor statutes to the current layoff and rehire statutes were enacted (see Stats. 1959, ch. 2, p. 949; former §§ 13447, 13448, 13448.5), temporary employees were those employed to teach "temporary" classes of up to three or four months duration. (Stats. 1959, ch. 2, § 13337, p. 937.) "Substitute" employees were those filling positions of "regularly employed persons absent from service." (Stats. 1959, ch. 2, § 13336, p. 937.) Both temporary and substitute employees were dismissable "at the pleasure of the board." (Stats. 1959, ch. 2, §§ 13445, 13446, p. 949.)

In 1967, the Legislature included within the definition of "temporary employee" any person "employed to teach adult or community college classes for not more than 60 percent of the hours per week considered a full-time assignment for regular employees having comparable duties . . . . [They] shall not become a contract employee . . . ." (§ 87482.5, subd. (a); see former § 13337.5.) Thus, part-time employees were deemed to be temporary employees with the same job insecurity. In *Peralta Federation of Teachers* v. *Peralta Community College Dist., supra,* 24 Cal.3d at p. 380, the Supreme Court asserted that the 1967 legislation adding the less-than-60-percent employee to the temporary classification "was a compromise between (1) the objective of the authors to impose limits of purpose and duration on the authority to hire temporary community college teachers, and (2) the proposal of the local government committee to place virtually all newly hired community college teachers on temporary status." The *Peralta* court described temporary teachers hired to teach less than 60 percent of full time: " 'They receive a written letter of notification from the district regarding their employment for the coming academic year. The letter states the instructor's potential assignment and specifies that his position is a temporary one. *They are hired from quarter to quarter or from semester to semester, as the case may be. They are uniformly dismissed at the end of each year.*' " (*Id.,* at p. 376; italics added.)

In 1974, former section 13335 (see current § 87477) was amended to provide: ". . . At the time of initial employment during each academic

statute]: "During the period of his preferred right to reappointment, any [laid-off] employee shall, in the order of original employment, be offered prior opportunity for substitute service during the absence of any other employee who has been granted a leave of absence or who is temporarily absent from duty . . . ." (Stats. 1959, ch. 2, § 13448, p. 950.) At the time of former section 13448's enactment "substitute" employees were those filling positions of "regularly employed persons absent from service." (Stats. 1959, ch. 2, § 13336, p. 937.)

year, each new certificated employee of the school district shall receive a written statement indicating his employment status and the salary that he is to be paid. *If a school district hires a certificated person as a temporary employee, the written statement shall clearly indicate the temporary nature of the employment and the length of time for which the person is being employed.* If a written statement does not indicate the temporary nature of the employment, the . . . employee shall be deemed to be a probationary employee . . . ." (Stats. 1974, ch. 1239, p. 2684, italics added.)

Because temporary employees, including those hired year after year on a part-time basis, hold positions of a temporary nature and are technically dismissed each year, it would make no sense under the statutory scheme to speak of the layoff of a temporary employee resulting from a reduction in services. Their employment is extinguished each year. If they are to teach successive years, it is only because they have been *rehired* for a new year (or semester). Because tenured and contract employees have priority over temporary employees, a "reduction in services" and a consequent layoff of tenured and/or contract employees under section 87743 should occur only after a district has decided not to reemploy its temporary teachers.[11] For purposes of the reemployment statutes, if the District offers a class previously taught by a temporary employee following a layoff, it has reestablished a service. If it employs someone to teach that class, it has increased the number of employees following the layoff. Any other conclusion would circumvent the priority given to tenured and contract teachers under the statutes.

This position is supported by *Poppers* v. *Tamalpais Union High School Dist.* (1986) 184 Cal.App.3d 399 [229 Cal.Rptr. 77], a case involving the construction of analogous layoff and rehire statutes relating to certificated employees teaching grades kindergarten through 12th grade. (§§ 44949, 44955, 44956.) There the petitioner, a tenured teacher, was laid off in 1981 as a result of a reduction in services even though his seniority number was higher than that of a retained tenured employee because the petitioner was not certificated and competent to perform the retained employee's duties as district grants coordinator/project writer. In 1983, the District decided to eliminate the grants coordinator/project writer position and to transfer the previously retained teacher to a vacant multisubject assignment position which petitioner was credentialed and competent to render. Petitioner challenged the assignment claiming the rehire statute gave him priority to the position because of his seniority;[12] his argument was that the language in

---

[11] An exception to this would occur if a temporary instructor is teaching a class that no tenured or contract employee is credentialed or competent to teach.

[12] At issue in *Poppers, supra,* was section 44956, subdivision (a)(1) which read in pertinent part: "For the period of 39 months from the date of such termination, any employee who in

section 44956, i.e., "provided, that no probationary or other employee with less seniority shall be employed to render a service which said employee is certificated and competent to render," required that he be offered the vacant multisubject position even though the number of employees had not been increased nor the discontinued service reestablished. The First District, concluding that the provision was intended to encompass the transfer of existing employees and that the petitioner was entitled to the position, asserted that the Legislature's use of the term "employ" rather than "hire" supported that conclusion. The court further asserted: "The statutory purpose of preserving the seniority rights of terminated employees would be patently circumvented if [petitioner] were deemed disentitled to multisubject assignment simply because he was laid off before the position became available." (*Id.*, at p. 405.)

The *Poppers* case holds that if a position becomes available which a laid-off employee is competent and certificated to teach, a laid-off senior tenured employee has priority over a *retained* junior tenured employee. A tenured employee must have at least the same, if not more, rights in relation to a temporary employee. We conclude that pursuant to the rehire statutes, appellants should have been offered classes scheduled in the evenings beginning in the 1982-1983 school year.

The District attempts to get around this unfavorable result by arguing that it offers two distinct types of services, i.e., day classes taught by tenured and contract employees and night classes taught by temporary employees. Its contention appears to be that the day school and evening school are separate entities with separate seniority lists and that there can be no cross-over between the two.

We note first that the District has made no claim that it comes under former section 72012 which provided for the establishment of separate day and evening community colleges but was repealed in 1981. (Stats. 1976, ch. 1010, § 2; Stats. 1981, ch. 470, § 45.) Moreover, even assuming the District contended it formed separate colleges under that section prior to its repeal, there is nothing in the record in this case to support a claim of two separate schools; in fact, all the evidence points to the contrary. The schedule of classes included in the record mentions nothing of a separate evening col-

the meantime has not attained the age of 65 years shall have the preferred right to reappointment, in the order of original employment as determined by the board in accordance with the provisions of Sections 44831 and 44855, inclusive, if the number of employees is increased or the discontinued service is reestablished, with no requirements that were not imposed upon other employees who continued in service; provided, that no probationary or other employee with less seniority shall be employed to render a service which said employee is certificated and competent to render."

lege. The schedule does not reveal a separate administrative board for an evening college. The most it says about evening classes is "Evening classes offer an opportunity for community involvement as well as crossover registration for day students." Moreover, the master contract itself reveals there is no dichotomy between day and evening classes. It provides that, although efforts will be made to assign a major portion of the instructional load of regular and contract employees during the hours of 8 a.m. to 5 p.m. Monday through Friday, such instructors may be assigned evening and weekend classes if the "needs of the District dictate." Thus, the District's attempts to insulate the evening classes from the reaches of the regular and contract employees on the ground of a separate system or separate "services" is entirely unsupported.

## II

■ The District makes an alternative claim that the collective bargaining agreement precludes appellants from asserting any rights to the evening positions.[13] Even assuming arguendo the District correctly interprets the

---

[13] The pertinent collective bargaining agreement provisions are the following: The master contract provision reads in pertinent part: "G. Organizational Security [¶] 1. Part-Time Employees [¶] a. Reemployment [¶] (1) A part-time certificated employee who has taught the equivalent of three semesters out of the last six semesters can expect to be rehired. Division Directors will render to the part-time certificated employee notification setting forth reasons for termination of any class. Upon request of the employee, he/she shall be given both cause for termination and due process before the Board of Trustees in open and/or closed session as requested by the employee. [¶] (2) In the event of temporary termination due to insufficient class enrollment, the said instructors will be offered the first opportunity for reemployment in part-time hourly courses for which they are credentialed and qualified. Qualification shall be determined by the District based upon fields of study, past teaching experience congruent with the specific course offering, and proven instructional ability. [¶] b. Layoffs and Termination [¶] (1) Layoffs for instructors who have taught the equivalent of three semesters out of the last six semesters and who have been laid off for lack of enrollment will be on a seniority basis in the area of certification. [¶] (2) If it becomes necessary, as provided for under the provisions of Article II Hours of Employment, for a full-time instructor to replace a part-time instructor, layoffs of the part-time instructor shall be made on the basis of the part-time seniority list; and, if possible, the part-time instructor reassigned. Part-time instructors with the least seniority in the bargaining unit shall be the first to be temporarily terminated. Seniority in the bargaining unit shall be determined on the basis of first-rendered paid service.
"  .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .
"Article II:   Hours of Employment
"  .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .
B.   Terms . . . .
According to college policy, classroom instructors will, whenever possible, be assigned a major portion of their instructional load during the hours of 8 a.m. to 5 p.m., Monday through Friday. Instructors may, however, be assigned classes during evenings and weekends as special needs of the District dictate. If, because of special needs of the District, it becomes necessary to assign certificated employees other than between the hours of 8 a.m. to 5 p.m., such assignments will be made by mutual agreement of the staff member and the supervisor whenever possible. If mutual agreement cannot be achieved, such assignment will be made

collective bargaining agreement, the appellants could not have waived any of their statutory rights by entering into the contract. Section 87485 provides: "[With one exception][14] any contract or agreement, express or implied, made by any employee to waive the benefits of this chapter [ch. 3 'Employment' includes layoff and rehire provisions] or any part thereof is null and void." (See *Hart Federation of Teachers* v. *William S. Hart Union High School Dist.* (1977) 73 Cal.App.3d 211, 214 [141 Cal.Rptr. 817]; *Winslow* v. *San Diego Community College Dist.* (1979) 97 Cal.App.3d 30, 35 [158 Cal.Rptr. 509]; cf. *California Teachers' Assn.* v. *Parlier Unified School Dist.* (1984) 157 Cal.App.3d 174, 183 [204 Cal.Rptr. 20]; *Raven* v. *Oakland Unified School Dist.* (1988) 206 Cal.App.3d 742, 750-751 [254 Cal.Rptr. 37] [nonwaiver provision of § 44924 (parallels § 87485 within scheme applicable to K-12) applies to collective bargaining agreements.][15] We recognize that the statutory scheme governing certificated employees teaching grades K-12 provides that the layoff and rehire statutes relating to those employees "shall not be applicable to probationary certificated employees who are covered by a collective agreement which contains provisions for the layoff and reassignment of such employees" if the school district has an average daily attendance of 400,000 or more. (§ 44959.5) However, we have found no comparable provision (nor has the District directed our attention to one) in the Education Code sections relating to the layoff and rehire of community college certificated employees.[16] Moreover, the District's position is that the Education Code does not give laid-off tenured employees the right to teach the evening classes; its argument essentially is that the collective bargaining agreement is consistent with the statutory scheme.

## III

Having established the appellants' right to be offered the evening classes beginning in the 1982-1983 school year, we turn to the exhaustion of admin-

---

only by the appropriate vice president who shall document all the alternatives considered and justify the necessity for the assignment. All loads so assigned will be considered in the District load policy and at no time will required daily scheduled classroom instruction span more than seven hours unless specifically requested in writing by the employee and approved by the appropriate vice president."

[14] The one exception is the provision in section 87744 that a laid off tenured teacher can waive his rehire rights for up to one year. (§ 87485.)

[15] The District made no allegations in its answer that the principles of res judicata or collateral estoppel barred the appellants from litigating the question of their *statutory* rights in the mandamus action because of the Association's entering into binding arbitration with the District on the question of the laid-off employees' rights under the collective bargaining agreement. Moreover, the arbitrator specifically noted that the scope of his authority was the "four corners of [the] collective bargaining agreement" and he stated he was "not . . . apply[ing] external law."

[16] Furthermore, section 44959.5 applies only to probationary, i.e., contract employees; it has no application to tenured employees.

istrative remedies question. ▮▮▮ The District contends that appellants are precluded from asserting any rights to the positions because they failed to assert their rights to "bump" the temporary teachers at the layoff hearing. The District contends appellants should have informed it at the layoff hearing that they wished to teach the evening classes previously taught by the temporary employees. The District's claim is that the regular and contract employees' "bumping" rights (i.e., the right of an employee with more seniority to take the position of another with less seniority) should have been exercised against the temporary employees at the layoff hearing. Their failure to do so, argues the District, is a failure to exhaust administrative remedies. We disagree.

As recognized by both sides at the hearing, temporary employees have no statutory right to a layoff hearing. They may be dismissed at will by the District. Regular and contract employees have due process rights to cause and a hearing before they can be relieved. When a community college decides to lay off its regular and contract employees because it is reducing services, presumably it has decided to first cut the temporary employees. That is what the layoff statute presupposes. The layoff statute specifically provides that no regular employee may be laid off while "any probationary employee, or any other employee with less seniority, is retained to render a service" which the regular employee is competent to render. (§ 87743.)

Before the layoff hearing, appellants received individual notices informing them of the particular kinds of services which were to be reduced or discontinued and of their probable layoff. The notices informed them of their right to a hearing and further notified them that "there is no probationary or permanent certificated employee with less seniority retained who is rendering service which you are certificated and competent to render." The accusation sent to the teachers to be laid off stated that "[t]he district will not retain any probationary employee, *or any other certificated employee with less seniority* than Respondent, during the 1982-1983 school year to render a service which Respondent is certificated and competent to perform." (Italics added.)

The notices also informed appellants that the equivalent of 18.78 full-time positions (a figure reduced at the hearing by 1.45) were to be reduced. The number of tenured and contract employees laid off at the hearing equaled this figure. The District said nothing of other positions being reduced or of other positions being retained.

The record reveals that, although some temporary employees received some layoff notices, at the hearing the District and appellants recognized that those employees have no hearing rights and therefore were not includ-

ed in the hearing. At the hearing the District stated it was withdrawing the accusations relating to the temporary employees because they have no right to a hearing.

The seniority list presented by the District at the hearing contained the names of regular and contract employees only. All of the questioning of the superintendent at the hearing related to that list; explanations were made as to why some regular or contract employees were "skipped over" in the layoff because of their specific certifications or competency which more senior employees did not possess.

The District claims that, the above notwithstanding, appellants had notice that the District was going to "retain" some of the temporary employees because only some of the temporary employees received "layoff" notices. Because of this notice, the District's argument continues, appellants should have exercised their "bumping" rights against those employees.

Under the layoff statutes, "when a service is eliminated the holder of the position is not necessarily terminated, but is entitled to another assignment to which his seniority and qualifications entitle him." (*Otto* v. *Davie* (1973) 34 Cal.App.3d 570, 575 [110 Cal.Rptr. 114].) The layoff statutes "'contain[ ] a mandatory directive to the board to determine whether any employee whose employment is to be terminated for a reduction in attendance or for a reduction in a particular type of service possessed the seniority and qualifications which would entitle him to be assigned to another position.'" (*Thompson* v. *Modesto City High School Dist.* (1977) 19 Cal.3d 620, 628 [139 Cal.Rptr. 603, 566 P.2d 237].) "Bumping" rights are exercised by an employee (with notice of termination because of a reduction in services) against a more junior employee *who is being retained* if the senior employee is credentialed and competent to perform the services being rendered by a more junior employee. (Ozsogomonyan, *Teacher Layoffs in California: An Update* (1979) 30 Hastings L.J. 1727, 1747-1749.) "Senior employees are given 'bumping' rights in that they will not be terminated if there are junior employees *retained* who are rendering services which the senior employee is certificated and competent to render." (*Alexander* v. *Board of Trustees* (1983) 139 Cal.App.3d 567, 571 [188 Cal.Rptr. 705]; italics added.)

The hearing procedure presupposes some sort of plan on the part of the District as to which employees are to be retained. Only when such a plan is presented does the concept of bumping rights have any meaning. (See *Davis* v. *Gray* (1938) 29 Cal.App.2d 403, 408 [84 P.2d 534]: "when it becomes necessary to reduce the number of teachers [and] . . . probationary teachers . . . are engaged in work which the permanent teacher is competent to perform. . . . it becomes the *absolute duty* of the board to first determine

whether the permanent teacher is competent to perform the duties of any such probationary teacher before he may be discharged. . . . [T]he burden is on the board to show that [the permanent teacher] is not competent to perform the service of a probationary teacher, before she may be discharged"; see also *Krausen* v. *Solano County Junior College Dist.* (1974) 42 Cal.App.3d 394, 402 [116 Cal.Rptr. 833]: "[Section 87743's predecessor] contains a mandatory directive to the board to determine whether any employee whose employment is to be terminated for a reduction . . . in a particular type of service possessed the seniority and qualifications which would entitle him to be assigned to another position.")

The only "plan" presented by the District in this case was a proposal to reduce certain services by specified amounts. The seniority list presented at the hearing contained only the names of regular and contract employees. The presentation of such a list implies that only those employees listed on it can be bumped. No plan was presented revealing what temporary employees were going to be rehired by the District. Moreover, it would make no sense to attempt to assert "bumping" rights against employees who are routinely dismissed at the end of each term. The positions of those employees were not at issue.

Appellants' failure to assert a right to the positions later filled by temporary employees where such positions were not at issue at the hearing is not a failure to exhaust an administrative remedy. There was no administrative remedy to exhaust. ■ "The rule that a party must exhaust his administrative remedies prior to seeking relief in the courts 'has no application in a situation where an administrative remedy is unavailable or inadequate.'" (*Diaz* v. *Quitoriano* (1969) 268 Cal.App.2d 807, 812 [74 Cal.Rptr. 358]; see also *Southern Pacific Transportation Co.* v. *State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 945, fn. 3 [237 Cal.Rptr. 191] and cases cited therein.) ■ The layoff proceedings provide no method for a regular or contract employee who has been notified of his or her imminent layoff to assert rights as against employees who are not on the seniority list and who have not yet been hired for the following year.

Nor does the failure to challenge the layoff within 30 days by writ of administrative mandamus (Code Civ. Proc., § 1094.5) preclude relief here. Appellants could not have raised "bumping" rights against the temporary instructors; likewise, they could not have subsequently challenged the validity of the layoff proceedings on the ground that the District later hired the temporary instructors for the succeeding school year.

## IV

■ The District also repeats its laches claim, arguing that even if appellants had no duty to assert any rights against the temporary employees at

the hearing, when they received notice of the spring 1982 schedule and the District's intention to hire temporary instructors that semester they should have asserted their rights at that time. No action was brought by the appellants until Spring 1983. This delay, argues the District, was to the District's prejudice because the District paid salaries to the temporary employees for that year. The District argues additionally that it was prejudiced by the delay because, under the collective bargaining agreement, the temporary employees can only be fired for cause. The District contends that if it allows the appellants to fill in for the classes taught by the temporary instructors, it will be subject to multiple lawsuits from the temporary employees. These two contentions are the bases of its prejudice claim.

We note initially that section 87744 provides that laid-off tenured employees offered reemployment may waive their right to reappointment for up to one year. An employee's failure to assert a right to reemployment where the District has failed to comply with the statute should put the District in no worse position than if it had offered the positions that first year and the appellants had waived their rights to reappointment.

Next we note that the collective bargaining agreement does not contain a definition of the type of "cause" that would justify "termination" of a temporary employee.[17] (Cause for termination of a regular or contract employee is provided in the Education Code.) To the extent a "failure to rehire" is considered a "termination," a failure to rehire because a tenured employee has a superior right to teach that class would be a sufficient cause.[18] The "Layoffs and Termination" provision of the master contract relating to temporary employees expressly recognizes the right of full-time instructors to "replace" the temporary, part-time instructors. (See fn. 13, *supra.*) Moreover, even assuming arguendo the correctness of the District's implicit assertion that a tenured instructor's preferential right to the position is insufficient cause to justify failing to rehire a temporary employee, appellants' delay in bringing this action would have no bearing on any alleged prejudice to the District. If the appellants did not receive notice of the hiring of the temporary employees until the spring schedule was mailed, any immediate protest by appellants would put the District in the same position it was in with regard to the hired employees when this action was filed.

We next consider the claim that the District would be prejudiced by appellants' delay in the assertion of their rights because it already paid

---

[17] See footnote 13, *ante.*

[18] The "cause" provisions for regular and contract employees are separate from the layoff provisions. A layoff is allowed for reasons distinct from the reasons for terminating the services of a particular teacher. (See *Gassman* v. *Governing Board* (1976) 18 Cal.3d 137, 143-145 [133 Cal.Rptr. 1, 554 P.2d 321].)

salaries to the temporary employees for the 1982-1983 school year (before this action was filed) and any acknowledgment of appellants' rights to those positions would result in double payment for that year. The District appears to acknowledge that if appellants waive any rights to salaries for that year, any vestige of prejudice relating to the double payment would be eliminated. (See *Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351 [82 Cal.Rptr. 337, 461 P.2d 617].) However, the District urges that such prejudice has not been eliminated here because appellants have not waived any right to backpay. "In the absence of a waiver," the District argues, "the trial court properly determined that the potential back pay liability constitutes substantial prejudice to the District."

What the District fails to recognize, however, is that the stipulated issue before the trial court was the District's *obligation to offer* appellants the evening classes *starting with the 1982/1983 school year*. The question of damages was deferred for a later hearing. With the issue framed for the court as a question of the parties' legal rights, it is no wonder appellants expressed no view on the double payment problem. Given the posture of the case, their failure to waive any rights to pay for the 1982-1983 school year should not prevent them from exercising their rights to the positions from the time of the filing of the action. The question of their rights to damages with respect to any school year was deferred.

The trial court erred in concluding that the prejudice requirement for a laches claim was met. ■ The court also erred in relying on an estoppel defense when such was neither pleaded nor argued by the District. (See 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1044, pp. 460-461.)

DISPOSITION

Appellants had a right to be offered the evening classes following the layoff. The judgment is reversed. We remand the case to the trial court for consideration of the bifurcated issue of damages, commencing with the 1983-1984 school year. Appellants shall be awarded their costs on appeal.

Carr, J., concurred.

**EVANS, Acting P. J.**—I respectfully dissent.

I disagree with the posture in which the majority have placed the matter on appeal, which is the predicate for their lengthy discussion on the question of reemployment rights under Education Code sections 87744 and

87745; it is my opinion that the substance of this case is dealt with by Education Code section 87743 which relates to layoff, not reemployment.

Additionally, the majority opinion gives no more than lip service to the trial court's determination that plaintiffs' action was barred by laches. In their conclusion on that question, I believe they are wrong. I view that question as pivotal to the proper disposition of the matter.

In order to adequately state my dissenting decision, I set forth the following factual and legal analysis to support my belief that the judgment should be affirmed.

In 1977, the Educational Employment Relations Board (now the Public Employment Relations Board [see Gov. Code, § 3541]) directed that the Shasta-Tehama-Trinity Joint Community College District (District) part-time (temporary) certificated instructors be included in the same bargaining unit with the District's full-time (permanent) certificated instructors.

In 1978, the Shasta College Faculty Association (Association), the exclusive bargaining agent for the unit, negotiated a master contract agreement with the District on behalf of all certificated instructors. A high priority item in those negotiations was job security for part-time instructors. Consequently, eligible part-time instructors were accorded layoff and reemployment rights in part-time (evening) courses on the basis of seniority in the part-time service.[1] Those contract provisions resulted in the District's

---

[1] Article I, section G, of the master contract agreement, relating to organizational security, provided: "1. Part-time Employees [¶] a. Reemployment [¶] (1) A part-time certificated employee who has taught the equivalent of three semesters out of the last six semesters can expect to be rehired. Division Directors will render to the part-time certificated employee notification setting forth reasons for termination of any class. Upon request of the employee, he/she shall be given both cause for termination and due process before the Board of Trustees in open and or closed session as requested by the employee. [¶] (2) In the event of temporary termination due to insufficient class enrollment, the said instructors will be offered the first opportunity for reemployment in classes for which they are credentialed and qualified. [¶] b. Layoffs and Termination [¶] (1) Layoffs for instructors who have taught the equivalent of three semesters out of the last six semesters and who have been laid off for lack of enrollment will be on a seniority basis in the area of certification. [¶] (2) If it becomes necessary, as provided for under the provisions of Article II—Hours of Employment, for a full-time instructor to replace a part-time instructor, layoffs of the part-time instructor shall be made on the basis of the part-time seniority list; and, if possible, the part-time instructor reassigned. Part-time instructors with the least seniority in the bargaining unit shall be the first to be temporarily terminated. Seniority in the bargaining unit shall be determined on the basis of first-rendered paid service."

Thus, the master contract accorded part-time instructors more job security and procedural rights than otherwise provided under the Education Code. (See Ed. Code, § 87742 ["Governing boards of community college districts may dismiss temporary employees at any time at

establishing, at the Association's insistence, a separate part-time seniority list to govern assignments into the evening classes.

In 1982, in the face of financial constraints, the District elected to discontinue or reduce services in several areas of its curriculum, necessitating the layoff of a number of full-time, certificated faculty members, including plaintiffs, for the 1982-1983 school year. On April 21, 1982, pursuant to Education Code sections 87740 and 87743, the affected employees were provided a layoff hearing before an administrative law judge.[2] Each of the plaintiffs was represented by counsel at the hearing. At the hearing plaintiffs did not challenge the use of dual seniority lists for full-time and part-time instructors, nor did they assert any right to displace, or "bump," any part-time instructors teaching in areas for which plaintiffs were credentialed and qualified. The administrative law judge found cause for not reemploying plaintiffs because of discontinuance or reduction of certain services, and he further found that "[n]o certificated employees with less seniority are being retained for service which any [laid-off employee] is certificated and competent to render."

On May 5, 1982, the District's governing board adopted the administrative law judge's decision. That same month, the fall 1982 teaching schedule was published and distributed. The schedule included evening classes to be taught by part-time instructors who were being reemployed for the following school year. Following receipt of that schedule, plaintiffs did not request a reconsideration of the layoff decision (see Gov. Code, § 11521), nor did they file a petition for a writ of administrative mandamus challenging the decision (see Gov. Code, § 11523; Code Civ. Proc., § 1094.5).

On June 11, 1982, by letter to the District, plaintiff Dick Kakuda asked for a position teaching any of 11 evening courses being offered in the fall 1982 semester, or any other courses for which his credential qualified him. His request was not construed by the District to be an assertion of a reemployment right, and the request was apparently denied. Kakuda made no objection at that time.

When the spring 1983 teaching schedule was published, the District again heard no protest from plaintiffs or from the Association.

---

the pleasure of the board."]; *Saraceno* v. *Foothill-De Anza Community College Dist.* (1982) 127 Cal.App.3d 850, 856-857 [179 Cal.Rptr. 742].)

[2] The District also gave notice (accusations) to a number of part-time instructors, but, as those instructors were not entitled to a hearing before an administrative law judge (the master contract provided for a hearing before only the board of trustees), the accusations were dismissed by the administrative law judge. The record is silent as to the further disposition of those part-time instructors.

In mid-April 1983, one year after the layoff hearing, the Association filed grievances on plaintiffs' behalf. The Association challenged the District's use of dual seniority lists under the master contract, and it requested plaintiffs' reinstatement with backpay. The District denied the grievances in September 1983, and the Association requested binding arbitration. An arbitration hearing was held January 19, 1984, and a decision adverse to the Association was rendered May 25, 1984.

The individual grievants subsequently filed the instant petition for a writ of mandate seeking reinstatement with backpay. They further petitioned the superior court to vacate the arbitrator's decision as contrary to public policy and beyond the scope of the arbitrator's authority.[3] Plaintiffs' position, in essence, was that the Education Code accords them, as full-time (permanent) certificated instructors, layoff and reemployment rights not accorded part-time (temporary) instructors.[4] They asserted that their statutory reemployment rights preempt the part-time instructors' contractual rights to the extent part-time instructors have been employed, beginning with the 1982-

[3] Although the Association disagrees with the arbitrator's decision, it chose not to challenge it. The Association asserts that its interest at this point lies in supporting the public policy favoring the finality of arbitration decisions in the field of labor relations. Accordingly, pursuant to Code of Civil Procedure section 1285, the Association is a named respondent on the petition to vacate the arbitrator's decision.

[4] Education Code section 87743, governing layoff of permanent employees, and as it read at the time in question, provides, in pertinent part: "Whenever in any school year the average daily attendance in all of the schools of a district for the first six months in which school is in session shall have declined below the corresponding period of either of the previous two school years, or whenever a particular kind of service is to be reduced or discontinued not later than the beginning of the following school year, and when in the opinion of the governing board of said district it shall have become necessary by reason of either of such conditions to decrease the number of regular employees in said district, the said governing board may terminate the services of not more than a corresponding percentage of the certificated employees of said district, regular as well as contract, at the close of the school year; provided, that the services of no regular employee may be terminated under the provisions of this section while any contract employee, or any other employee with less seniority, is retained to render a service which said regular employee is certificated and competent to render. . . . [¶] The board shall make assignments and reassignments in such a manner that employees shall be retained to render any service which their seniority and qualifications entitle them to render."

Education Code section 87744, governing reemployment rights for regular (tenured) instructors, provides, in pertinent part: "Any regular employee whose services have been terminated as provided in Section 87743 shall have the following rights: [¶] (a) For the period of 39 months from the date of such termination, any employee who in the meantime has not attained the age of 70 years shall have the preferred right to reappointment, in the order of original employment as determined by the board in accordance with the provisions of Sections 87401 to 87424, inclusive, if the number of employees is increased or the discontinued service is reestablished, with no requirements that were not imposed upon other employees who continued in service. However, no contract or other employee with less seniority shall be employed to render a service which the employee is certificated and competent to render."

Education Code section 87745 provides similar reemployment rights for contract (probationary) instructors for a period of 24 months and subject to the rights of tenured instructors.

1983 school year, to teach evening courses for which plaintiffs are credentialed and qualified. Moreover, to the extent the master contract protects part-time instructors at the expense of full-time instructors, it is contrary to public policy and presents a nonarbitrable matter.

The District disagreed with plaintiffs on the merits of the controversy. In addition, the District interposed the defenses of laches and statute of limitations. The District maintained that plaintiffs were asserting nothing more than bumping rights, which should have been advanced at the layoff hearing in April 1982. In reliance on plaintiffs' apparent acquiescence in the District's use of dual seniority lists, part-time instructors were reemployed to teach in the evening division for the following school year. Despite their knowledge of the pertinent facts in April or, at the latest, May of 1982, plaintiffs first raised this issue one year later, in April 1983, when they filed their grievances under the master contract. The District argued the delay was unreasonable in the circumstances, and the District was prejudiced by it in that it had previously reemployed and paid the part-time instructors for the evening positions now claimed by plaintiffs. Moreover, under the terms of the master contract, the part-time instructors could not be dismissed without cause, and dismissal of the part-time instructors to accommodate plaintiffs' demands would potentially cause additional litigation for the District. In addition, the District asserted plaintiffs' exclusive remedy for any asserted violation of bumping rights was by way of administrative mandamus (Code Civ. Proc., § 1094.5), not ordinary mandamus (Code Civ. Proc., § 1085). Accordingly, plaintiffs' action is barred by the 30-day limitation period for filing a petition for writ of administrative mandamus. (See Gov. Code, § 11523.)

Following a hearing at which the records of the prior layoff and arbitration hearings, as well as testimony of the District's superintendent, were received into evidence, the superior court found that, regardless of the merits of plaintiffs' claim, they unreasonably delayed asserting it, to the District's detriment.[5] The writ petition was denied, as was the petition to vacate the arbitration decision, and judgment was entered for the District accordingly.

"The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay. . . . 'If because of his delay in seeking his

---

[5] Although not raised by the District as a defense, the court also concluded, by parity of reasoning, that plaintiffs' claim was further barred by the doctrine of equitable estoppel. As I conclude the court properly held for the District on its laches defense, I need not address the propriety of the court's alternative holding on a defense not specifically pleaded.

remedy, without offering a satisfactory explanation for the delay, a prejudice results to his adversary, he will be precluded from enforcing his demand. It is not so much a question of the lapse of time as it is to determine whether prejudice has resulted. If the delay has caused no material change *in statu quo, ante,* i.e., no detriment suffered by the party pleading the laches, his plea is in vain.'" (*Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359-360 [82 Cal.Rptr. 337, 461 P.2d 617], quoting *Brown* v. *State Personnel Board* (1941) 43 Cal.App.2d 70, 79 [110 P.2d 497], fns. omitted.)

In an action by a discharged public employee for reinstatement with backpay, the defense of laches may be established by a showing that the position for which reinstatement is sought has been filled by another; the resulting double payment by the employer would constitute prejudice. (*Conti, supra,* 1 Cal.3d at p. 360; *Vernon Fire Fighters Assn.* v. *City of Vernon* (1986) 178 Cal.App.3d 710, 726 [223 Cal.Rptr. 871].) This type of prejudice is aggravated when the position sought by the discharged employee has since been filled by one who may not be terminated except for cause. Thus, in *Kimberlin* v. *L. A. City High School Dist.* (1953) 115 Cal.App.2d 459 [252 P.2d 344] (disapproved on another point in *Conti, supra,* at p. 362), a teacher sought reinstatement and backpay about one year after his discharge. In the interim, the school district had hired and paid another teacher, on a written contract basis, for the position demanded by the plaintiff. This was sufficient to sustain the school district's laches defense: "This notwithstanding the fact that at the trial, appellant, through his counsel, offered to waive his right to receive compensation for the period prior to judgment should the court order his reinstatement. Without undertaking to determine the effectiveness of such purported waiver, the fact remains that another had been appointed to the position formerly held by appellant, whose employment may not be terminated except for cause. [Citation.] Thus the respondent district would be prejudiced if appellant were now reinstated by reason of the financial burden incident to the addition of another employee." (115 Cal.App.2d at p. 465.)

"Ordinarily laches is a question of fact. [Citation.] Whether laches has occurred in a particular case presents a question primarily for the trial court, and an appellate court will not interfere with a trial court's discretion in this respect unless it is obvious that manifest injustice has been done or unless its conclusions do not find substantial support in the evidence. [Citation.]" (*Chang* v. *City of Palos Verdes Estates* (1979) 98 Cal.App.3d 557, 563 [159 Cal.Rptr. 630]; see *Vernon Fire Fighters Assn.* v. *City of Vernon, supra,* 178 Cal.App.3d at pp. 718-719 [substantial evidence standard of review].) I review the record accordingly.

Initially, in order to place this matter in what I believe is its proper perspective, I observe what this case is *not* about. Regardless of the label plaintiffs and my colleagues in the majority opinion attach to it, this case is not about reemployment rights under Education Code sections 87744 and 87745. Plaintiffs were laid off under Education Code section 87743 after the District decided to reduce or discontinue particular services that plaintiffs had theretofore been employed to render. For instructors so laid off, Education Code sections 87744 and 87745 provide a preferred right to reappointment *if,* within the specified time periods, "the discontinued service is reestablished."[6] I fail to discern any evidence in this case that that predicate to plaintiffs' preferred right to reappointment had occurred. Indeed, I believe the evidence from the District is uncontroverted, that the discontinued services for which plaintiffs were laid off had not been reestablished. Under those circumstances, Education Code sections 87744 and 87745 do not come into play. Reduced to its essence, plaintiffs' complaint is that assertedly less senior, part-time instructors were retained by the District to render services which plaintiffs were certificated and competent to render. This places plaintiffs' claim within the purview of Education Code section 87743, which relates to layoff, not reemployment, rights.

The record discloses that plaintiffs, aware of the District's use of dual seniority lists for full-time and part-time instructors, failed to assert at their layoff hearing any right to bump part-time instructors who were being retained.[7] Within 30 days of the District's adoption of the administrative decision finding cause for plaintiffs' layoff, the District published and distributed its teaching assignments for the 1982-1983 school year. Assuming the publication of these assignments was plaintiffs' first notice that part-time

---

[6] Education Code section 87743 also provides for layoff when, because of decline in average daily attendance, it becomes necessary to reduce the number of instructors. Education Code sections 87744 and 87745 provide a corresponding preferred right to reappointment if the number of regular or contract (i.e., "full-time") instructors is subsequently increased. Because plaintiffs were not laid off because of decline in average daily attendance, a subsequent increase in the number of the District's instructors would not alone trigger their preferred right of reappointment. In any event, the uncontroverted evidence is that the District's average daily attendance and its number of instructors had consistently decreased since the 1982 layoff.

[7] As the superior court found, "The Accusations for termination of both regular [full-time] and temporary [part-time] employees referred prospectively to the 1982-83 academic year. Only a small portion of the persons contained on each of the two separate seniority lists received Accusations. Regardless of the statutory propriety of the accusations to the temporary employees, said process at the very least put the Association and its members on notice that the District planned to rehire for the academic year 1982-83 those temporary employees in the night school who had not received Accusations. Despite this patent indication of the District's interpretation of Section G [of the Master Contract], neither the Association nor its members even mentioned, much less asserted, any bumping rights under Education Code Section 87743 against the temporary nighttime instructors at the layoff hearings."

instructors were being retained to teach evening classes for which plaintiffs were credentialed and qualified, plaintiffs did not, despite their right to do so, request a reconsideration of the layoff decision. Nor did they petition the superior court for a writ of administrative mandamus. Plaintiffs' first indication to the District that they considered the use of dual seniority lists improper in making teaching assignments came one year after the layoff hearing. In the interim, and in reliance on plaintiffs' apparent concurrence in the District's interpretation of the master contract, the District retained and paid part-time instructors to teach the classes now claimed, with backpay, by plaintiffs. Moreover, by the terms of the master contract, the retained part-time instructors were not subject to dismissal except for cause.[8] Finally, plaintiffs have simply offered no satisfactory explanation for their delay in asserting the invalidity of the dual seniority lists.[9] The record amply supports the superior court's finding that plaintiffs unreasonably delayed asserting their claim, acquiescing for one year in the District's interpretation of the master contract, to the District's prejudice. Perceiving no manifest injustice in the circumstances, I would conclude the court did not abuse its discretion in sustaining the District's laches defense.

In any event, I am persuaded by the District's argument that, because plaintiffs' claim is essentially an assertion of bumping rights (in the guise of an assertion of reemployment rights), their exclusive remedy, assuming the assertion has merit, was through the administrative layoff procedure. Having failed to request reconsideration of the administrative decision or to seek judicial review by petition for writ of administrative mandamus within the 30-day limitation period (see Gov. Code, §§ 11521, 11523), plaintiffs are barred from asserting their claim in this proceeding. (See *Temescal Water*

---

[8] Plaintiffs assert that consideration of this fact as an element of prejudice in support of the District's laches defense improperly reaches the merits of the controversy. I disagree. Education Code section 87742 provides: "Governing boards of community college districts *may* dismiss temporary employees at any time at the pleasure of the board." (Italics added.) When the Education Code does not provide a mandatory, inflexible standard in conflict with a contract proposal, that proposal is negotiable, and employees may contract for rights greater than those provided by statute. (*San Mateo City School Dist.* v. *Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 866 [191 Cal.Rptr. 800, 663 P.2d 523].) And I perceive no inherent conflict between the part-time instructors' contractual right to dismissal only for cause and the full-time instructors' statutory layoff and reemployment rights.

[9] Plaintiffs rely on Education Code section 87744, subdivision (b), which provides: "The aforesaid right to reappointment may be waived by the employee, without prejudice, for not more than one school year, unless the board extends this right, but such waiver shall not deprive the employee of his or her right to subsequent offers of reappointment." Plaintiffs argue that, between April 1982 and April 1983, they so waived their right to reappointment and, consequently, cannot now be penalized for having failed to assert it earlier. I am not persuaded. In my view, Education Code section 87744, subdivision (b), contemplates first an offer of reappointment. No such offers were made in this case, and thus the threshold for waiver without prejudice was never reached.

*Co.* v. *Dept. Public Works* (1955) 44 Cal.2d 90, 106 [280 P.2d 1]; *Compton* v. *Board of Trustees* (1975) 49 Cal.App.3d 150, 154, 159 [122 Cal.Rptr. 493].) Moreover, to the extent plaintiffs argue the evidence giving rise to their claim did not arise until after the administrative decision—i.e., the subsequent publication and distribution of the 1982-1983 teaching assignments— the fact remains that this evidence came to light within the 30-day period for administrative reconsideration of the decision. By failing to avail themselves of that opportunity for reconsideration, plaintiffs have simply waived judicial review of the matter for their lack of reasonable diligence. (Cf. *Schoenen* v. *Board of Medical Exrs.* (1966) 245 Cal.App.2d 909, 915 [54 Cal.Rptr. 364].)

The parties raise a number of other procedural points, as well as renewing their arguments made below on the merits of plaintiffs' claim; because of my conclusion that laches was properly invoked, I have not addressed those arguments.

I would affirm the judgment.